## STEWART *v.* STARK.

1. Deeds—Covenants—Restrictions.

Where building restrictions in a deed were not intended for a district in which stores were to be erected, but they provided that houses should be 25 feet from the street line and no building other than dwelling houses should be built within 25 feet of any street line, it does not follow that stores may be constructed in violation of the restrictions; nor is such breach excused because other violations of the restrictions had occurred or other stores had been built on the plat.

2. SAME—EQUITY.

> And where the general condition of a plat and its surroundings had remained as contemplated by the grantors, notwithstanding that a number of stores had been placed on the restricted property, and defendant bought with knowledge of the requirements, he was rightly enjoined from violating them.

Appeal from Genesee; Wisner, J. Submitted April 27, 1914. (Docket No. 147.) Decided July 24, 1914.

Bill by Charles C. Stewart and another against Vergil L. Stark for an injunction. From a decree for complainants, defendant appeals. Affirmed.

*Black & Roberts,* for complainants.

*William V. Smith,* for defendant.

Each original deed to lots in the residence portion of Oak Park subdivision, city of Flint—each deed given by the owners who platted the land—contains the following:

"This deed is made subject to the following building restrictions which have been adopted for said plat, viz.: No house shall be erected on Hamilton avenue or Saginaw street to cost less than $800. No house shall be erected on any other street of said plat which shall cost less than $600. The front foundation wall of all houses shall be 25 feet from the street line, which is the building line established for said plat. All houses shall have a suitable foundation of either brick or stone. No building other than dwelling houses shall be built within 25 feet of any street line."

There are 20 large blocks, in two parallel lines; the lots, with 50 feet frontage each, facing either north or south on east and west streets. The plat was made in the year 1900, since which time about 600 houses have been erected in the restricted district, all but 30 or 40 of them in compliance with the restrictions. Complainants seek to restrain defendant from erect-

ing a store building on lot 18, block 5, in said subdivision, within 25 feet of the line of the side street, in alleged violation of that portion of the restriction reading:

"No building other than dwelling houses shall be built within 25 feet of any street line."

Defendant knew of the restriction and that it had been generally recognized, but he urges that the plat was intended for residence purposes only, and the particular restriction was made in view of such intended use, was intended to keep barns and other outhouses used with dwelling houses at a suitable distance from any street line. An interpretation of the language of the restrictive clause to make it mean that a store building may not be erected in the place where it is conceded a dwelling house may be built, it is said, is to create and enforce by mere literalism a restriction never contemplated by the original owners or by their grantees, to the damage of defendant and in the absence of any showing of damages to complainants.

It appears that complainants use a portion of their property in the same block for business purposes; one building being occupied by a drug store with rented rooms over the store. Defendant proposes to use his building for a drug store. No injury peculiar to complainants appears to be threatened other than a possible, or probable, competitive renting of property. There are a considerable number of business places in the plat; 15 of them on corners being built nearer than 25 feet from a street line. It appears that, on a part of the plat reserved for factories, 5,000 to 8,000 men are employed, who were expected to find, and many of whom have found, residence upon the portion of the land embraced in the residence district. In the natural order of things, in the development of the locality, business places became a necessity, and, as has been stated, there are a number of them in the 20

blocks in the residence district. There is at least one bank. There is no dispute of material facts.

The rule which it is claimed is applicable is taken from 11 Cyc. p. 1077, as follows:

"Covenants restraining the use of real property, although not favored, will nevertheless be enforced by the courts, where the intention of the parties is clear in their creation, and the restrictions or limitations are confined within reasonable bounds; but where there has been such a change in conditions as to defeat the object and purpose of the covenant, and to render it inequitable to deprive the convenantor of the privilege of using his property as the new conditions require, equity will not enforce specific performance."

Again, 13 Cyc. p. 719:

"Equity has power to enforce valid restrictions, as to buildings or concerning the use of the property, in favor of those entitled to the benefit thereof and will prevent a violation of the same in a proper case by injunction or other adequate relief.  *  *  *  Equity will not, however, as a rule, enforce a restriction, where, by the acts of the grantor or of those who derived title under him, the property, and that in the vicinage, has so changed its character and environment and in the uses to which it may be put as to make it unfit or unprofitable for use if the restriction be enforced, or where to grant the relief would be a great hardship upon the owner and of no benefit to complainant, or where complainant has waived or abandoned the restriction."

OSTRANDER, J. (*after stating the facts*). The language of the restrictions and the condition of the property when it was platted support the idea that it was intended and supposed that residences only and necessary and convenient outbuildings would be erected on the property. In this view, the restrictions are plain and not unreasonable. Doubtful meaning and real ambiguity are introduced when the restrictions are read as though applying to any but dwellings or

residences. A building line for the fronts of all buildings being clearly established, no good reason appears for permitting dwellings, and not stores to be built to the lines of the side or lateral streets. In other words, if it was supposed, when the restrictions were imposed, that lots would be used both for dwellings and for business places, no reason appears for refusing the right to build a store wherever a residence might be built. Counsel for appellant supports the idea that the restrictions were made in view of a residence district in his argument in favor of a modification of the restrictions because of changed conditions. In my opinion, the restrictions were not framed for a district intended to be built up with both business places and residences. It does not follow that they may be disregarded because stores have been built at various places in the plat, or because there have been violations of the restrictions. See *Schadt* v. *Brill*, 173 Mich. 647 (139 N. W. 878, 45 L. R. A. [N. S.] 726). No radical change has been shown in the environment and character of the neighborhood. The general condition of the property and its surroundings is still the condition contemplated when the plat was made and when buyers erected homes thereon. See *Moore* v. *Curry*, 176 Mich. 456 (142 N. W. 839) ; *Frink* v. *Hughes*, 133 Mich. 63 (94 N. W. 601). It is unnecessary for us to consider whether the restrictions impliedly deny the right to build store buildings upon the property. If they do, defendant, who bought with knowledge of the restrictions, is in the position of an intruder, and equity will not favor him. It is enough, for the purposes of this case, to say that stores, not being dwelling houses, in view of the restrictions, cannot be built nearer than 25 feet to any street line.

This conclusion requires an affirmance of the decree.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.