LAMBRECHT *v.* GRAMLICH.

Deeds—Building Restrictions—Equity.

> The purchaser of land under a deed containing no building restrictions is not bound by conditions of a restrictive character in subsequent conveyances of the vendor, affecting surrounding property.

Appeal from Wayne; Hosmer, J. Submitted January 27, 1915. (Docket No. 133.) Decided July 23, 1915. Rehearing denied October 29, 1915.

Bill by Richard G. Lambrecht and others against

Amos E. Gramlich and others for an injunction, etc. From a decree for defendants, complainants appeal. Affirmed.

*William Van Dyke,* for complainants.

*James H. Pound,* for defendants.

Steere, J.   Complainants, who are interested as residents and lot owners in Scovel's subdivision, city of Detroit, filed this bill to enjoin threatened violation of alleged building restrictions claimed to rest upon a lot of said subdivision, located at the southeast corner of Scotten and Tireman avenues, upon which defendant Gramlich was about to erect a store and flats building.   In 1908 one Philip Bingman purchased from Scovel lots of said subdivision numbered 29 to 34, inclusive, of block 9, free from any restrictions as to use.   These lots are located on the east side of Scotten avenue, and are each 30 feet in width, except lot 34, which is an unequal-sided corner lot having a frontage of 16.65 feet on Scotten and 165.91 feet on Tireman avenue, widening to a rear width of 87.75 feet back of Scotten upon a parallel alley.   Bingman placed these lots for sale with the real estate firm of Lambrecht, Kelly & Co. whose subagent, Sorge, soon negotiated a sale of lot 34 to defendant Amos Gramlich. These negotiations were conducted upon the premises, which were then vacant.   This was the first one of those lots sold.·   Sorge claimed to have informed Gramlich that buildings upon the lots would be restricted to dwellings, not closer than 18 feet from the front lot line.   This is denied by Gramlich, who testified that he not only bought the lot free of restrictions, as a prospective business location, but had no knowledge of any claim to the contrary until he started to build.   After the preliminary agreement, he was directed to the office of Lambrecht, Kelly & Co. to close up the matter and get his contract.   Lambrecht drew

the contract and closed the deal with him on April 28, 1909, Bingman being present and signing the agreement when the first payment was made. Bingman and Lambrecht claim they at that time advised him of building restrictions, which he denies, but the contract was then drawn, signed, and delivered free of restrictions, while whatever had been agreed upon was fresh in the minds of the contracting parties and presumably was embodied in the written agreement. Gramlich paid $125 down, and was to pay the balance in stated installments, payments to be made at the office of the real estate firm through which he bought. He took immediate possession and has remained in open, notorious, and continuous possession, either in person or by tenants, receiving ground rent for a small office building upon the premises during much of the time. At the time of his purchase the Bingman lots were all vacant, and there were few buildings on the subdivision in that locality. On October 12, 1909, Bingman, unknown to defendants, conveyed lot 34 to John C. Wright and wife, by a deed which contained the following restrictions:

"It being understood that all buildings erected upon said lot shall set back 18 feet from the front of said lot line and to be used for dwelling purposes only."

In November, 1909, the Wrights conveyed this lot to C. H. Howard by a deed without restrictions. Howard served notice upon Gramlich that he had "bought my contract," as Gramlich states it, and he was advised by the real estate firm to which he had previously made payments to thereafter make them to Howard, which he did until March 4, 1912, when, his payments being completed, Howard gave him a deed of the property without restrictions, and an abstract tracing the title down to Bingman. In the spring of 1912, after he had paid up and received his deed, Gramlich visited lot 34 with a surveyor and measured it out preparatory

to building upon it. He at that time saw and talked with complainant Smith, who owned lot 33, and told him what he intended to do, and later showed him plans of the intended building. In those conversations Smith told him that property was restricted, which Gramlich contended could not be the case as to his lot, for his abstract, contract, and deed made no mention of it. He also was seen by Lambrecht, who insisted restrictions on the property prohibited the proposed building, which he again denied. He later let a contract for the building, and was restrained from proceeding by a preliminary injunction issued upon the filing of this bill. He was a traveling salesman, absent from Detroit much of the time, and testified that prior to his taking steps to build he knew of no restriction in any contracts or conveyances of these lots, or any general plan to limit use of the property to residential purposes only; that this was his first real estate deal, and he had no knowledge of any conveyance of the lot by Bingman to the Wrights, but had confidence in Howard, whom he knew and to whom they had told him to make payments; that he supposed a deed from Howard was sufficient, saw that his abstract, contract, and deed contained no restrictions, and first learned of the deed from Bingman to Wright containing a restriction after this suit was begun. Complainants showed that the remaining Bingman lots were disposed of with restrictions in the deeds or contracts, which had been complied with, all lots of said group, except 34, having upon them dwelling houses fronting on Scotten avenue, 18 feet back from the lot line, as also 14 other lots fronting on said avenue in the same block, Scotten avenue between Scovel place and Tireman avenue being occupied for residence purposes only. As before stated, lot 34 had a frontage of less than 17 feet on Scotten avenue and over 165 feet on Tireman. Gramlich's proposed building, of brick veneer, fronting

about 80 feet on Tireman avenue, with three dwellings, or flats, facing in that direction and a drug store on the corner, the Scotten side, or front, being 13.65 feet. Upon full and final hearing of the case the trial court dismissed complainants' bill.

It is shown, without dispute, that Bingman bought this group of lots without any restrictions, and shortly thereafter sold lot 34 to Gramlich, giving him a land contract without restrictions. When this first lot was sold by him, all of the lots were unoccupied. According to plaintiffs' testimony there were but four houses in the block on that side of the street, while Gramlich claims but one. If anything was said at that time of a general plan of restrictions as to these lots, no purchaser had accepted or acted upon it, nothing had been or was then done to carry out such plan, and Bingman himself, then under obligations to no one to observe and enforce it, immediately repudiated it, so far as Gramlich was concerned, by giving him a contract without restrictions. His right and title to the lot originated when he received his contract and took possession, and his possession was notice of whatever rights he had, and in that particular protected him as fully as would recording his contract. Whatever Bingman decided to and did do afterwards in regard to restrictions could not qualify or restrict Gramlich's rights unless by accepting and becoming a party to it he estopped himself from subsequently denying it. We agree with the trial court that no conduct on his part is shown which would operate as an estoppel. He was the first purchaser by contract without restrictions in a group of lots upon which there were no restrictions and no improvements. Such a case bears no relation to one where a subsequent purchaser, with notice, of a lot in a generally restricted subdivision, which is clearly shown to have been developed and improved as a residential district under a general plan, maintained from

its inception, evidenced by written instructions in most of the conveyances, fully understood, accepted, complied with and acted upon by all purchasers to a point where it is enforceable *inter se* as to all the then owners.

Counsel for complainants contends, as a controlling and important legal proposition of general interest, that:

"If, in one of these contracts, the restriction is omitted, and the vendee is innocent of knowledge of the restriction, and then the vendor and original owner of the subdivision deeds other lots subject to the restriction, and finally deeds the balance of the lots by warranty deed containing the building restriction"

—the vendee in the land contract, who later receives an unrestricted deed pursuant to the terms of his contract from the grantee of the original subdivider, or grantor, and contractor with him, cannot violate or ignore the restriction which necessarily appears in his chain of title to the fee, and therefore, as Bingman deeded reciprocal easements of restriction in lot 34 to others, which were of record before Gramlich took the deed to it from Howard, he had constructive notice of and was bound by the restrictions in the Wright deed, given after his contract. In that connection it is urged for the court to hold otherwise would be disastrous because:

"Thousands of lots are being sold in Detroit on land contracts in restricted subdivisions, and after the lots are thus sold they are deeded by the subdivider to some party who assumes the contracts and receives the payments and eventually gives the deed."

What has happened or may happen with others cannot be included as an influencing consideration in this case. It is manifest that under our recording laws, with reasonable care and consistency in conveyancing and recording, the evil suggested is easily avoided. If

the subdividing grantors and their agents have indulged in loose conveyancing, and so juggled titles as to work the injury to purchasers of lots suggested by counsel, the courts can only deal with the individual cases as they arise. The law cannot be shaped to help irregular and doubtful practices which may prevail in a certain locality.

A complete answer to the proposition in this case is that Gramlich was in possession of his lot before and during all the time Bingman was disposing of the other lots with restrictive conveyances, and there could be no purchasers without constructive knowledge of his rights, which were measured by the contract under which he held possession.

The decree of the lower court is affirmed, with costs.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.