SHERRARD v. MURPHY.

1. VENDOR AND PURCHASER—INJUNCTION—BUILDING RESTRICTIONS
—BREACH OF COVENANT.

The owners of Fox Creek subdivision in Detroit sold to a
purchaser by land contract one lot, upon the restriction
that buildings should face an avenue named, not nearer
than 20 feet from the front line, and prohibiting open
drainage; also, that no building should cost less than
$2,000. The assignee of the contract undertook to erect
a structure of less than the value agreed upon, and com-
plainants filed their bill to enjoin the breach of covenant.
In part of the subdivision covered by the restrictions
some building had been done of which only a small pro-
portion complied with the covenants in the conveyances.
This condition for the most part existed when the de-
fendants purchased. *Held*, that the owners could make
the restrictions a condition of any sale, and did not lose
their rights because former buyers had violated the cove-
nants.

2. SAME—COVENANTS—ESTOPPEL.

As to a successor in title of the contract purchaser, the
vendors were not estopped by any acts done before the
contract was executed.

3. SAME—BUILDING RESTRICTIONS—ESTOPPEL.

The vendors, who still owned several lots, in the subdi-
vision, could enjoin the erection of the building pro-
posed by defendant, where the other purchasers had not
substantially changed the character of the residence dis-
trict and the prior violations were only temporary; the
court finding that the restriction was still valuable to
the grantors.

Appeal from Wayne; Hally, J. Submitted June 14,
1916. (Docket No. 93.) Decided September 27, 1916.

Bill by Charlotte B. Sherrard and others against
Thomas Murphy and Catherine Woods for an injunc-
tion. From a decree for complainants, defendant
Murphy appeals. Modified and affirmed.

*Angell, Bodman & Turner,* for complainants.

*Bishop & Kilpatrick,* for defendants.

BROOKE, J.  Plaintiffs in this cause are owners of Fox Creek subdivision in the city of Detroit.  Lot No. 484 of said subdivision was sold to a Mr. Gannon under a land contract dated February 15, 1911.  The restrictive clause contained in said contract was as follows:

"The said party of the second part further expressly covenants with the said parties of the first part, and it is a further condition of this conveyance, that all buildings erected or placed on said property shall face Ashland avenue and shall not be nearer than twenty (20) feet to the front line of said avenue; that no building so erected or placed shall cost less than two thousand dollars ($2,000.00); that there shall be no direct or open drainage from any building of any character on said property into Fox Creek, and that said party of the second part, her heirs and assigns, shall not do anything to impair, obstruct or in any way interfere with the flow and free use of Fox Creek as a common waterway by the owners of the lots in Fox Creek subdivision, nor with the improvement thereof for the purpose of navigation."

On November 16, 1911, Gannon, with the consent of the vendors, assigned his contract to Thomas Woods. On May 22, 1912, Thomas Woods by an independent contract, which did not contain the restrictive clause, sold lot No. 484 to the defendant Thomas Murphy. No notice of the sale by Woods to Murphy was given plaintiffs, and later, the full consideration having been paid plaintiffs, a deed was executed by them to Catherine Woods, mother and sole heir at law of Thomas Woods, deceased, dated April 10, 1915.  This deed contained the same restrictive covenant which had been inserted in the Gannon contract, and which is quoted above.  Later Mr. Woods conveyed said lot to the de-

fendant without restrictions. Defendant having undertaken to erect a structure on the back end of the lot here in question of the value of from $500 to $700, plaintiffs filed their bill of complaint to enjoin the erection of said building.

It was the contention of the defendant in the court below, and he makes the same contention here, that the plaintiffs by their acquiescence in repeated breaches of the restrictive clause should now be held to have estopped themselves from insisting upon its observance by the defendant. This contention is based upon the following situation: We quote from the opinion of the learned circuit judge:

"In that part of the subdivision covered by the restrictions above enumerated, that is, those that pertained so expressly to Fox Creek, there are 60 lots. There lots have been built upon over a period of about five or six years. Most of the building was done previous to the recent season and before the institution of these proceedings. It appeared in testimony that since Mr. Murphy got possession of the lot from Mr. Wood that the general aspect of the place has changed but little. There are, all told, 33 structures upon these 60 lots. Of these 33 structures, 4 of them comply with the restrictions that have been enumerated; 10 of these structures are residences the year around; 4 are exclusive boathouses; 6 have no accommodations for boats at all; and 13 are designed to receive boats and to house people. Of the 33 structures, 29 are built facing Fox Creek and only 4 are built facing Ashland avenue. The structures are of all characters, one and two story, even some flats or buildings that are used by more than one family. The vast majority of them are very modest structures—many of them would be called 'shacks.' The defendant's is intended for a residence and is being erected on the rear of the lot facing Fox Creek. It will cost about $700. Before the defendant got his deed he was apprised of the restrictions."

It should perhaps be added that the 60 lots mentioned in the excerpt above all lie between Ashland

avenue and Fox Creek. There are, of course, an equal number of lots on the west side of Ashland avenue besides one or two other parallel streets running from Jefferson avenue to the lake in the same subdivision, all of which may be said to be in some measure influenced for good or ill by the observance, or failure to observe, the restrictive clause in question.

There can be no doubt that upon many, perhaps nearly one-half, of the 60 lots lying between Ashland avenue and Fox Creek violations of this clause have occurred. The structures so violating the restriction are for the most part erected upon the rear end of the lots along Fox Creek, and are used for boathouses or summer dwellings, the same structure sometimes being used for both purposes. This use of the lots in question appears to have been made by the owners and suffered by the vendors at a time when Ashland avenue was unpaved and without sewer or water. The street is now paved and has both sewer and water, and its later developments on both sides appear to be in harmony with the restrictive clause.

It seems quite certain that many, perhaps most, of the structures abutting on Fox Creek are either temporary in character or designed for use as boathouses, thus leaving the front of each lot free for the fulfillment of the restriction when built upon.

The record fails to show that the complainants, with a single exception, have permitted any breach of the restrictive clause under contracts or deeds issued since the Gannon contract was made. The exception noted involves the lot adjoining that owned by defendant, the owner of which was permitted to erect a small structure upon the rear end under an agreement to comply with the restriction within two years. While upon the stand defendant refused to enter into a similar agreement.

It is asserted by plaintiffs, and with this assertion we agree, that if the lots upon which the buildings which offend the restrictive clause had been sold either with or without restriction and those buildings erected thereon prior to the sale of the lot in question to Gannon, it would still have been competent for plaintiffs to have lawfully restricted the use which Gannon should make of his lot. This defendant may urge as estoppel only such acts or omissions on the part of the plaintiffs affecting the restrictive clause as have occurred since the making of the Gannon contract which is the basis of his title. *Reilly* v. *Otto,* 108 Mich. 330 (66 N. W. 228).

We have no doubt that the restriction, considering the number of lots still owned by plaintiffs in the subdivision, is one of value to them, and we are not convinced that the breaches thereof which have occurred will ultimately operate as an entire or even substantial change in the neighborhood, as it would have been had the restrictive clause been observed.

Under such circumstances relief should be granted. *Misch* v. *Lehman,* 178 Mich. 225 (144 N. W. 556). The decree enjoining the erection of the proposed structure at the present time is therefore affirmed. The right of defendant to erect any suitable building upon the rear end of the lot *after* compliance with the restrictive clause as to the erection upon the front of the lot does not appear to be questioned.

The decree will be modified in this particular and, as so modified, will stand affirmed, with costs.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.