DAVISON *v.* TAYLOR.

1. INJUNCTION—DEEDS—COVENANTS—BUILDING RESTRICTIONS—ENFORCEMENT—RULES.

> The enforcement in a court of equity of restrictive covenants in a deed is not a matter of absolute right, and is governed by the same general rules which control equitable relief by specific performance.[1]

[1] On right to enforce restrictive covenants as affected by change in neighborhood, see note in 28 L. R. A. (N. S.) 707.

As to who may enforce restrictive covenant or agreement as to use of property, see note in 37 L. R. A. (N. S.) 12.

On multiple residence structures as violative of restrictive covenants in deed, see note in 45 L. R. A. (N. S.) 726.

2. SAME—DEEDS—BUILDING RESTRICTIONS—ESTOPPEL.

Deeds without restrictions executed prior to the date of a deed containing restrictive covenants, would not work an estoppel against the enforcement of the latter covenants.

3. SAME—EVIDENCE—SUFFICIENCY.

Evidence *held,* sufficient to show that business had not so far entered a residential street as to deprive it of its residential character or release defendants from a covenant in a deed, relating to the maintenance of the street as a residential street.

4. SAME.

On a bill to enforce a restrictive covenant in a deed against the keeping, operating or maintaining of any building upon the premises conveyed, except necessary buildings for single-residence purposes, evidence *held,* insufficient to show such deviation from the original plan in platting the subdivision and selling other premises therein on the same street as to estop plaintiff from insisting upon compliance with the covenant sued on.

5. DEEDS—COVENANTS—BUILDING RESTRICTIONS—ESTOPPEL.

A grantee is not entitled to use premises without restrictions of any kind because of the mere fact that the grantor in a deed containing restrictive covenants, by permitting the grantee to expend money in departing in one respect from such restriction by remodeling the house on the premises into a two-family flat and using it as such for a number of years, may be estopped from claiming the grantee cannot continue such use.

6. SAME.

A single or occasional breach of the original plan of a subdivision in some distant part of the plat or under circumstances such as not to injuriously affect a party's property, or where there is no radical or material change in the general conditions or surroundings, will not estop such party from asserting his rights under a restrictive covenant in his deed to an adjacent owner against such owner whose breach of such covenant threatens to materially diminish the value and desirability of such party's property.

7. SAME.

In a suit to enforce a restrictive covenant in a deed for the use of a lot for single-residence purposes, *held,* that

the erection of a four-family flat or establishment of a business place on a lot adjoining plaintiff's premises on which she had erected for her personal use a house worth $12,000, would so materially affect the desirability of her premises as a home and decrease its value that she had peculiarly personal interest in the enforcement of the covenant in her deed to the owner of such adjoining lot designed to maintain such lot for single-residence purposes.

8. SAME.

Where plaintiff had consented to defendants so remodeling their residence as to make it a two-family flat and had consented to other similar flats on the street, even if plaintiff was estopped by such consent, the estoppel could go no farther than the consent and defendants could claim no further benefit than a continuance of their residence as remodeled.

Appeal from Wayne; McDonald, J., presiding.. Submitted April 4, 1917. (Docket No. 26.) Decided May 31, 1917.

Bill by Mary A. Davison against John E. S. Taylor and another to restrain the violation of certain building restrictions. From a decree for plaintiff, defendants appeal. Affirmed.

*Charles S. Hampton* and *Lodge & Brown,* for plaintiff.

*Munro & Powell,* for defendants.

On April 17, 1906, plaintiff and her husband, being then owners by the entirety, platted a subdivision in Highland Park known as Davison's subdivision of Park lot 1 of quarter section 5, 10,000-acre tract. The subdivision comprised 20 acres, and extended from Woodward avenue west to Hamilton boulevard. The principal street, Davison avenue, extended its entire length. The lots fronting on Woodward and on the south side of Davison avenue, according to the original plan, had

a frontage of 68½ feet on Woodward and 400 feet on Davison, and an alley was laid out at the west end of these lots. This, however, was vacated and one substituted 200 feet west of Woodward. Business places were erected on this 200 feet frontage on Davison, and in some instances the second story was used for flats. This was before defendants contracted to purchase a lot, and when there were only two houses on Davison avenue, and they on the north side. There are nearly 100 lots fronting on this avenue, and it was designed as a residence district. The Davisons selected the property on the south side of this street, and immediately west of the alley before mentioned, for their home. On July 15, 1908, they entered into a contract with defendants to sell 50 feet adjoining them on the west. This contract contained the following building restrictions:

"A part of the considerations of this contract is that no building shall be kept, operated or maintained upon said premises except the necessary buildings for one single residence purposes, also that no dwelling house shall be erected thereupon which shall cost less than twenty-five hundred dollars ($2,500) and two stories and attic in height and to be of brick veneer; permission is given to store plumbers materials in basement and plumbing work no machinery to be used.

"Also that all buildings to be erected upon said premises shall at all times be situated not less than twenty-two feet from the front lot line and two feet from the west lot line.

"And it is further hereby expressly covenanted by the parties of the second part that the foregoing covenants and conditions shall run with said premises and shall be chargeable thereupon and shall bind their heirs, assigns and legal representatives."

Soon after entering into this contract defendants moved a two-story building on the premises. They lived up stairs, and for a while the husband had a plumbing shop down stairs. He had no machinery

there, and his testimony would indicate that in his business little beyond occasional pipe cutting was done on the premises. It was his headquarters, and he stored his tools and had some pipe there. He was in ill health, and his business, until recently, has been inconsequential. On April 22, 1911, plaintiff and her husband executed a deed of the premises to defendant Daisy L., containing the following building restriction:

"A part of the consideration of this indenture is that no building shall be kept operated or maintained upon said premises except the necessary buildings for single residence purposes.

"Also that no dwelling house shall be erected thereupon which shall cost not less than $2,500.00 and 2 stories and attic in height, also that all buildings to be erected upon said premises shall at all times be set not less than 22 feet from the front lot line 3 feet from the west lot and it is further hereby expressly covenanted by the said second party that the foregoing covenants and conditions shall run with said premises and shall be chargeable thereupon and shall bind her heirs assigns and legal representatives."

It is claimed by the defendants that they did not see the deed until it was produced in court, and did not know of this restriction until the trouble arose which resulted in this litigation.

In 1910 the Davisons built a house worth $12,000 on the lands selected for their home, and in the spring of 1911 defendants remodeled and improved their building, making an apartment on each floor, and Mrs. Taylor's mother, with her family, occupied one of these flats and the defendants the other. The record discloses that Mrs. Taylor consulted plaintiff about having her mother occupy one of these flats, and received her consent. Mr. Davison seems to have made vigorous protest to this, but plaintiff persuaded him to say no more about it.

The restrictions in the deeds for lots on Davison

avenue were not absolutely uniform. In the great majority of deeds they were the same as defendants', limiting to one-family dwelling. In a few instances two-family flats were allowed and in four instances on the entire street, double houses were allowed. Where there was any deviation from the single residence houses, the plans were subject to the approval of plaintiff, and as to the residential character of the street, the restrictions were strictly adhered to, except the few stores just off Woodward, which had been built before any considerable number of lots in the residential part of the plat had been sold. The witnesses testify that Davison avenue is a fine residential street and the houses good, some of them costing upwards of $8,000.

With the growth of Highland Park, Mr. Taylor's plumbing business grew, and the year before this bill was filed it amounted to $30,000. He conceived the plan of erecting another two-story flat, adjoining and connected with his present flat, thus making a four-flat apartment house, and using the basement for his plumbing business, and commenced excavation and the assembling of material with this in view. Plaintiff, her husband having died in 1913, instituted these proceedings to restrain defendants from erecting, building, or constructing any building to be used for business purposes, or for any purpose other than a residence for one family, to restrain the maintenance of the house then on the premises as a two-family flat, to restrain the maintaining any business on the premises, and particularly a plumbing shop, and for general relief. The case was heard by Judge McDonald, in the Wayne circuit, and a decree was entered, restraining defendants from erecting the proposed addition to the present building, or from maintaining any building, except such building as is appurtenant to a residence for a single family; but to save defendants expense of

remodeling the house on the premises they were permitted to keep it in its present form as a two-family apartment, with a single entrance. Defendant was permitted to store his plumbing goods and material in the basement of the present house, and to have his office in the house and do his office business there, but was restrained from conducting a store, or maintaining a plumbing shop. The decree was without prejudice to move for modification upon changed conditions rendering modification necessary or proper. There was some further detail in the decree not necessary to here relate. From this decree defendants alone appeal.

FELLOWS, J. (*after stating the facts*). We do not regard the question of whether, under the facts in the case, the provisions of the contract were superseded by those in the deed of importance. The decree went no further than the restrictions in the contract, if it went as far, and it was not seriously controverted upon the argument, but that so far as defendants' right to do business and store material is concerned, the decree protected him fully under present conditions.

"A person owning a body of land, and selling a portion thereof, may, for the benefit of his remaining land, impose upon the land granted any restrictions, not against public policy, that he sees fit, and a court of equity will generally enforce them." 7 R. C. L. p. 1114.

But their enforcement in a court of equity is not a matter of absolute right, and is governed by the same general rules which control equitable relief by specific performance. *Moore* v. *Curry*, 176 Mich. 456. Mr. Justice Bigelow, in *Whitney* v. *Railway Co.*, 11 Gray (Mass.), 359 (71 Am. Dec. 715), (approved by Chief Justice COOLEY in *Watrous* v. *Allen*, 57 Mich. 362 [24 N. W. 104, 58 Am. Rep. 363]), speaking of building restrictions, said:

"The purpose of inserting them in the deed is manifest. It was to prevent such a use of the premises by the grantee and those claiming under him as might diminish the value of the residue of the land belonging to the grantor, or impair its eligibility as sites for private residences. That such a purpose is a legitimate one, and may be carried out, consistently with the rules of law, by reasonable and proper covenants, conditions, or restrictions cannot be doubted. Every owner of real property has the right so to deal with it, as to restrain its use by his grantees within such limits as to prevent its appropriation to purposes which will impair the value or diminish the pleasure of the enjoyment of the land which he retains. The only restriction on this right is that it shall be exercised reasonably, with a due regard to public policy, and without creating any unlawful restraint of trade. Nor can there be any doubt that in whatever form such a restraint is placed on real estate by the terms of a grant, whether it is in the technical form of a condition or covenant, or of a reservation or exception in the deed, or by words which give to the acceptance of the deed by the grantee the force and effect of a parol agreement, it is binding as between the grantor and the immediate grantee, and can be enforced against him by suitable process, both in law and equity."

The defendants do not seriously controvert these elementary principles, but insist that plaintiff has waived her right to the enforcement of these covenants, that the original plan of the subdivision contemplated only single residences and restrictions uniform to those imposed on defendants in the contract, that by failing to adhere to these uniform restrictions, and by permitting other purchasers of lots to build differently than contemplated by these restrictions, she has abandoned the uniform plan and waived her right to the enforcement of the covenants against defendants; that when she contracted with defendants, she obligated herself to similarly restrict the entire street, and, failing so to do, released defendants from their restrictions entirely.

It is pointed out, and considerable space is devoted to the fact, that there are stores on Davison avenue, built on lands acquired from the Davisons without restrictions of any kind. But these stores were built before defendants entered into their contract. Deeds without restrictions, executed prior to the date of defendants' contract, would not work an estoppel against the enforcement of the contract with defendants. *Reilly* v. *Otto*, 108 Mich. 330 (66 N. W. 228) ; *Sherrard* v. *Murphy*, 193 Mich. 352 (159 N. W. 524) ; *Lambrecht* v. *Gramlich*, 187 Mich. 251 (153 N. W. 834). While the doctrine of estoppel may be invoked by reason of acts subsequent to the date of the contract, it may not be for prior acts thereto.

A careful examination of the record satisfied us that the claim that businesses are conducted on Davison avenue, besides the stores at the east end, is not sustained. It is claimed that there are numerous boarding and rooming houses in the first block, but the proof only shows that some of the people living on the street have a boarder or two at their family table, usually relatives, and that an occasional spare room is rented; this is the extent to which the proof goes. One lady living on the street does dressmaking, and some of defendants' witnesses speak of a knitting factory in one of the basements. Inquiry develops the fact that three old ladies live at this place, and have hand machines which they use to knit sweaters and other articles with. Upon these facts we are unable to conclude that business has so far entered this block as to deprive it of its residential character, or release defendants from the covenants.

It is further contended by defendants that plaintiff has permitted the erection of other than single residence houses to such an extent that defendants are now released from all restrictions. The facts do not justify such conclusion. We are satisfied from the

record that there has been no radical change shown in the environment and character of the neighborhood; the general condition of the property and its surroundings is still the condition contemplated when the land was platted and purchasers of lots built their houses; it is strictly a residential district. There is no claim that there are any four-family apartments, such as defendants planned to build on this street. Defendant claims there is one three-family flat on the street, but the proof shows this to be a double house with an attic. There are four double houses, all told, on the entire street, and some few two-family flats similar to defendants'. In the block where plaintiff and defendants live there are 31 lots fronting on Davison avenue. Including defendants' house, there are four two-family houses in this block. We do not think these facts show such a deviation from the original plan as to estop plaintiff from insisting upon compliance with the restrictions by the owner of land immediately adjoining hers.

By permitting defendants to expend money in remodeling their house into a two-family flat and using it as remodeled for a number of years she may have estopped herself from claiming that they cannot maintain it in its present condition, and the trial court evidently took this view of it, but it does not follow from this that all restrictions are waived, and that defendants may now use this lot without restrictions of any kind, nor does it follow that a single or an occasional breach of the original plan in some distant part of the plat, or under circumstances such as not to injuriously affect a party's property, or where there is no radical or material change in the general conditions, or surroundings, estop such party from asserting his rights against an adjacent owner whose breach of restrictions threaten to materially diminish the value and desirability of his property.

"The true rule" says Mr. Justice BROOKE, speaking for the court in *Misch* v. *Lehman*, 178 Mich. 225 (144 N. W. 556), "seems to be that, even after one or more breaches, equity will grant relief if the restriction can be shown to be of value to the complainant, and such breaches have not resulted in a subversion of the original scheme of development resulting in a substantial, if not entire, change in the neighborhood."

Mr. Justice MONTGOMERY, speaking for the court in *Frink* v. *Hughes*, 133 Mich. 63 (94 N. W. 601), said:

"More than this, as to such restrictions as are contained in this deed, it does not necessarily follow that, because the restrictive covenant is not inserted in deeds of *all* the property on this entire plat, therefore this restrictive clause is of no effect."

Supporting the rule announced, see *Schadt* v. *Brill*, 173 Mich. 647 (139 N. W. 878, 45 L. R. A. [N. S.] 726); *Stewart* v. *Stark*, 181 Mich. 408 (148 N. W. 393); *Moore* v. *Curry, supra; Sherrard* v. *Murphy, supra; Rowland* v. *Miller*, 139 N. Y. 93 (34 N. E. 765, 22 L. R. A. 182); *Brigham* v. *H. G. Mulock Co.*, 74 N. J. Eq. 287 (70 Atl. 185); *Brown* v. *Huber*, 80 Ohio St. 183 (88 N. E. 322, 28 L. R. A. [N. S.] 705); *Clark* v. *Martin*, 49 Pa. 289.

In the instant case the plaintiff has erected a house for her personal use, for her home, worth $12,000. It is apparent that the erection of a four-family flat, or the establishment of a business place on the adjoining lot, would materially affect its desirability as a home and decrease its value; one of the witnesses says the value would be decreased one-half. She, therefore, has a peculiarly personal interest in the enforcement of the restrictions against the owner of the adjoining land. From what we have already said it is apparent that she is not estopped from asserting these rights personal to her, and appurtenant to her property.

There is another view of this case which also precludes reversal. Defendants insist upon, and by the

decree appealed from were sustained in, their right to maintain a two-flat dwelling; at the same time defendant insists that plaintiff has waived her right to any restrictions by the fact that she has, in a few instances, given other landowners rights equal to, but not in excess of, their rights under the decree. In no instance on the entire street has plaintiff consented to the erection of any house for more than two families, and there are but few instances where she has done this. If she is estopped by this consent, the estoppel can go no farther than the consent, and defendants can claim no further benefit, from the application of the doctrine of estoppel, than was given them by the trial court.

The decree appealed from amply protects all rights of the defendants and should be and is affirmed. Plaintiff will recover costs of this court.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.