ANDRE *v.* DONOVAN.

1. DEEDS—COVENANTS—BUILDING RESTRICTIONS—ABANDONMENT.
    There was no abandonment of mutual covenants in a deed of one-half of all the portion of a block fronting on a certain street restricting the use of the premises conveyed "only for residence purposes" by subsequent deeds of each of the owners of a portion of the land of each, the two strips sold adjoining, where, although the covenants were not in all respects similar, they were essentially similar, it being asserted in each deed that the property conveyed was to be used "only for residence purposes."

2. SAME.
    A covenant against the use of premises for other than residential purposes is not broken by the use of a barn located on a corner of the premises as a garage and of a house formerly standing on the premises as a rooming house, where no objections were offered by other property owners or by their predecessors in title.

3. SAME.

Where the entire portion of a block fronting on a certain street was subject to restrictive covenants against ·use for other than residence purposes, there is no change in the character of the neighborhood through the encroachment of business rendering enforcement of the covenants inequitable, where both sides of the street up to and including the property in question are residential in character, some of the residences being very costly, and to permit the erection of store buildings would be an injury to residence owners, although the part of the block not subject to the restrictions has become business in character.[1]

Appeal from Wayne; Van Zile, J. · Submitted June 22, 1917. (Docket No. 142.) Decided September 27, 1917.

Bill by Anthony J. Andre and others against Timothy R. Donovan to restrain the erection of a building in violation of certain building restrictions. From a decree for plaintiffs, defendant appeals. Affirmed.

*Ward N. Choate,* for plaintiffs.

*Williams C. Harris* and *Seth J. Wicker,* for defendant.

In this case plaintiffs, who are the owners of three residences on the north side of Palmer avenue between Cass avenue and Woodward avenue, sought and obtained in the court below a permanent injunction preventing the defendant, who is the owner of a lot 60 feet by 150 feet on the northeast corner of Palmer and Cass avenues, from erecting thereon a block of stores covering the entire lot in violation of certain building restrictions. The history of the property in question shows that the block bounded by Woodward

[1]For cases discussing the question of multiple residence structures as a violation of restrictive covenants, see note in 45 L. R. A. (N. S.) 726.

198—Mich.—17.

avenue on the east, Cass avenue on the west, Antoinette street on the north, and Palmer avenue on the south, originally consisted of nine or ten lots numbered from 13 to 22. Although, so far as said lots were occupied at an early date, they were occupied for residence purposes, the record does not show that the block generally was restricted to residence purposes. Prior to 1883, however, one Alfred F. Wilcox became the owner of a strip of ground 301 feet in frontage on Palmer avenue and about 150 feet on Cass avenue, being the northeast corner of Cass and Palmer avenues. While said Wilcox was the owner of said corner, and on June 14, 1883, he executed a deed of the easterly one-half thereof to one J. C. Hough, which deed contained mutual covenants of the parties in the following terms:

"The parties hereto covenant and agree each with the other (with reference to his one-half of said parcel above described) as follows: (1) The said property shall be used only for residence purposes and no residence shall be erected thereon of a less value than four thousand dollars. (2) Said property shall not be divided into lots or parcels of less than fifty feet in width, and there shall be only one residence erected upon each lot or parcel. (3) The front of such residences, when erected, shall be not less than the following distances from the northerly side of said Holden avenue, viz.: Upon the lot nearest Woodward avenue, forty feet; upon the second lot from Woodward avenue, forty-five feet; and upon all the other lots fifty. And no residence or other building shall be nearer than fifty feet from said Holden avenue, except the two residences above excepted. (4) No residence shall be erected so that any part thereof will be nearer than fifteen feet from the dividing line between the easterly and westerly half of said parcels as above determined. (5) Said Wilcox (Alfred F.) covenants and agrees that when a barn is erected upon the lot on the northwest corner of Woodward avenue and said Holden avenue, the north part thereof shall be at least seventy-three feet from said Holden avenue. All these cove-

nants are intended to be binding upon the heirs and executors of the parties hereto, and upon their grantees of said premises.

"Said A. F. Wilcox further agrees to erect upon the westerly half of said parcel a residence as above provided within eighteen months from the date hereof."

· Thereafter residences were built which occupied all of said 301-foot strip, which residences have been occupied to the present time, with the exception of that which had been erected on the corner lot, now owned by the defendant. That one has been demolished, and defendant has now made an excavation covering the entire lot with the intention of building thereon a business block consisting of six or eight stores. It is said that the houses owned by two of the three plaintiffs are operated as rooming houses. There is no claim, however, on the part of the defendant that any business in its proper sense has been conducted upon any portion of the 301 feet covered by the restriction, with the possible exception that an old barn facing Cass avenue on the northerly corner of defendant's lot was for a time operated as a garage. The record discloses that the balance of the block bounded as above shown has gradually changed from a residential to a business block, and that on Cass avenue business places have been erected in said block up to the northerly line of defendant's property.

On June 20, 1884, Wilcox sold to one Adeline L. Sprague 90 feet frontage of the land retained by himself, and Hough likewise on said date sold to the said Adeline L. Sprague 30 feet of the frontage acquired by him. These deeds severally contained the following restrictive covenants:

Deed, Wilcox to Sprague:

"Said first parties further agree that the adjoining lot of sixty and one-half feet front still owned by them shall be used only for residence purposes; that only one residence which shall be of brick shall be erected

thereon the cost value of which shall not be less than four thousand dollars; the front thereof shall be not less than forty feet back from the northerly line of the street and the easterly walls of which shall be at least ten feet from the easterly line of said lot, and that the barn to be erected on the lot on the northwest corner of Woodward avenue and the Holden road shall be located as described in said deed from the first parties to Joseph C. Hough.

"Said second parties agree that no more than two residences shall be placed upon the one hundred and twenty feet front included in this deed and the deed this day made by J. C. Hough and wife to said second parties. That said residences shall be of brick, two stories high; the fronts thereof shall be at least forty feet back from the northerly line of the street and no part of either shall be nearer than ten feet from the westerly line of the parcel hereby conveyed and said property shall be used only for residence purposes and that two single two-story brick residences of the cost value of at least four thousand dollars each shall be erected upon said one hundred and twenty feet within one year from the date hereof."

Deed, Hough to Sprague:

"Said second party agrees that the property hereby conveyed shall be used only for residence purposes and that within one year from the date hereof she will cause to be erected upon this parcel and that this day conveyed by A. F. Wilcox and wife to said second party two (2) two-story single brick residences of the cost value of not less than four thousand dollars each. That no more than two residences shall be erected upon said two parcels without the written consent of said first parties, the fronts of which shall be at least forty (40) feet back from the northerly line of the street.

"Said first parties agree that upon the adjoining one hundred and twenty and one-half (120½) feet front still owned by them there shall be erected not more than two single residences, and that said property shall be used for residence purposes only, and that said residences shall be built of brick, and that the front of buildings placed thereon shall be at least forty (40) feet back from the northerly line of the street, and

that the cost value of such residences shall be not less than four thousand dollars each."

From the decree awarding an injunction, defendant appeals.

BROOKE, J. (*after stating the facts*). The first contention urged by defendant is that the two deeds from Hough and Wilcox to Sprague, dated June 20, 1884, operated as an abandonment of the restrictive covenants contained in the deed from Wilcox to Hough, dated June 14, 1883. Touching these deeds, it is said in argument:

"It is a singular and significant circumstance that, after making their mutual restrictive covenants in definite words, Wilcox and Hough should have omitted to affirm those covenants in making their later deeds to Mrs. Sprague; for it would have been the natural thing to mention them if they intended to perpetuate the covenants. Conversely it was perfectly competent for Wilcox and Hough, by appropriate language in their later deeds, to change or abrogate their former covenants, for they were still the only parties interested in the whole 301-foot strip, and the later deeds are of equal force with the first one."

We have examined the restrictive covenants contained in these two deeds with care, and find that in all essentials they agree with those contained in the earlier deed; at all events it is asserted in each deed that the property conveyed "shall be used only for residence purposes."

It is next urged by defendant that the restrictive covenants, if not abandoned, have been broken by permitting the use of the premises now owned by the defendant for a garage and repair shop and the house formerly standing thereon for a rooming house, no objection having been offered by the plaintiffs nor their predecessors in title. Upon this point defendant cites several cases from foreign jurisdictions. The

question has so frequently been passed upon by our own court contrary to the contention of the appellant that we find it unnecessary to go outside this State for authority. *Moore* v. *Curry,* 176 Mich. 456 (142 N. W. 839) ; *Schadt* v. *Brill,* 173 Mich. 647 (139 N. W. 878, 45 L. R. A. [N. S.] 726) ; *Misch* v. *Lehman,* 178 Mich. 225 (144 N. W. 556) ; *Stewart* v. *Stark,* 181 Mich. 408 (148 N. W. 393) ; *Casterton* v. *Plotkin,* 188 Mich. 333 (154 N. W. 151) ; *Sherrard* v. *Murphy,* 193 Mich. 352 (159 N. W. 524).

The contention of the appellant that the character of the neighborhood has so changed through the encroachment of business as to render enforcement of the restrictive covenants at this time inequitable will be found treated in several of the cases above cited. Both sides of Cass avenue up to and including the property in question are residential in character; the residences in the immediate neighborhood in many instances being very costly.

We have no hesitation in reaching a conclusion that to permit the erection of the structure contemplated by the defendant would very seriously injure not only plaintiffs, but others residing near by.

The decree is affirmed, with costs.

Kuhn, C. J., and Stone, Ostrander, Bird, Moore, Steere, and Fellows, JJ., concurred.