ROSENZWEIG *v.* ROSE.

COVENANTS — INJUNCTION — BUILDING RESTRICTIONS — RESIDENCE
DISTRICT—ESTOPPEL.

In a suit to enjoin defendant from erecting a 24-family
apartment house on a single lot which had been con-
veyed with others in the same subdivision with restric-
tions limiting each lot to a "dwelling house," *held*, that
there had been no such departures from the restrictions
as to estop plaintiffs from insisting upon a compliance
therewith.

Appeal from Wayne; Hally, J. Submitted April 17,
1918. (Docket No. 116.) Decided June 3, 1918.

Bill by Charles Rosenzweig and others against Al-
bert A. Rose to restrain the violation of certain build-
ing restrictions. From a decree for plaintiffs, defend-
ant appeals. Affirmed.

*W. W. Chapin,* for plaintiffs.

*Robert H. Burns* (*Monaghan, Monaghan, O'Brien
& Crowley,* of counsel), for defendant.

The material facts with reference to this contro-
versy are thus concisely stated in the opinion of the
trial judge who heard the testimony and entered the
decree:

"The plaintiffs, Charles Rosenzweig and Dora, his
wife, Joseph C. Robinson and Mary, his wife, William
McMahon and Mary, his wife, Frederick Toepel and
Susannah, his wife, and Oscar Kretzschmar and Mar-
garet, his wife, are respectively the owners of lots
numbered 83, 84, 86, 87 and 91 in Moses W. Field's
second subdivision situated on the east side of East
Grand Boulevard between Agnes and St. Paul avenues
in Detroit.

See note in 45 L. R. A. (N. S.) 726.

"This subdivision covers the east side of the Boulevard and the west side of Field avenue between Lafayette and St. Paul avenues.

"The building restriction is as follows:

"'The said party of the second part further agrees for his heirs and assigns that he will not occupy said premises except for a dwelling house, and that he will not erect any building on said premises of less value than $2,000.00 and not less than two stories in height.'

"Beginning with Lafayette and going in a northerly direction the lots in this plat on the Boulevard are occupied in this manner:

Parcel   1—An eight family terrace.
  "      2—A four family flat.
  "      3—A single house.
  "      4—A four family flat.
  "      5—A single house of the bungalow type.
  "      6—A double house.
  "      7—A double house.
  "      8—A double house.
  "      9—A double house.
  "     10—A double house.
  "     11—A single house.
  "     12—A double house.
  "     13—Two single houses.  One facing the Boulevard and the other in the rear facing Agnes avenue.
  "     14—The lot on which defendant is building.
  "     15—A double house.
  "     16—Vacant.
  "     17—A single house of the bungalow type.
  "     18—A double house.
  "     19—A single house.
  "     20—A single house.
  "     21—A single house.
  "     22—A double house covering 100 feet.
  "     23—A single house.
  "     24—Vacant.
  "     25—Vacant.

"On the west side of the street directly opposite, but not a part of the same subdivision, and not in all cases covered by a similar restriction, there are eleven double houses, one church, seven single houses, two

vacant lots, and both lots at the corner of Agnes avenue, besides the structure facing the Boulevard have double houses facing the side street.

"In the two blocks south of Lafayette, ending with Jefferson avenue, the Boulevard frontage is occupied with thirteen single houses, five double houses, three two-family flats, eight apartment houses, arranged as to apartments respectively as follows: six, four, six, six, twenty-four, fourteen, five and twenty-five; two terraces, one for three and the other for four families; four vacant lots; one church; one drug store and one saloon.

"Immediately in the rear of defendant's proposed structure the property fronting Field avenue is occupied by a public school. Other structures face Field avenue which have not complied with the restrictions given above.

"While it is true the restrictions must be confined to the property of the plat over which they extend this general description is given to show the character of the avenue and the structures which make up its frontage.

"Lot numbered 81 is on the northeast corner of Agnes and the Boulevard. The building which defendant proposes to erect on it will be 34 feet wide and 134 feet long. It will have entrances on the Boulevard and Agnes avenue. It will contain 24 apartments and be four stories high."

Plaintiffs by their bill prayed for an injunction restraining the construction of the building which the defendant proposed to build upon lot 81. The relief prayed for was granted, and the decree provided that it is left open to the defendant to bring to the attention of the court any changed condition of the property which may take place at a later date.

KUHN, J. (*after stating the facts*). The contention of counsel for the defendant and appellant is thus stated in their brief:

"It is the contention of the defendant that the restriction which was originally imposed upon the whole

of the subdivision has been abandoned and ceases to exist, by reason of the many violations that it has suffered, and that the conditions of the subdivision and the surrounding locality have so changed as to make it inequitable to enforce the restriction."

The court below found that there had not been a complete change in the neighborhood. We are satisfied that in this conclusion he was quite correct. The property is still devoted to the purposes for which it was originally intended, that is, it is still a strictly residential district—in fact, it is one of the most desirable residential sections of the city of Detroit. While it is true that there have been departures made from the original restriction of a one family residence, nevertheless there has been no such substantial change in the structure of the buildings as is contemplated by the defendant in the erection of a 24-family apartment building on a single lot. We take it it needs no argument to demonstrate that the erection of such a building would destroy the privacy of the neighborhood and make it much less desirable as a residential district, and if such a flagrant violation of the building restrictions imposed on this lot were permitted, the practical result would be the cancellation of all the restrictions imposed upon the entire subdivision. We are of the opinion that there have been no such facts shown as to estop the plaintiffs from insisting upon a compliance with the restrictions imposed on the lot in question, which the defendant purchased with full knowledge thereof. Various authorities from other jurisdictions are cited by counsel for appellant to sustain their contention, but the legal question here involved has so recently had our attention that it is only necessary to cite our own decisions to sustain the conclusion here arrived at. See *Moore* v. *Curry*, 176 Mich. 456; *Schadt* v. *Brill*, 173 Mich. 647; *Misch* v. *Lehman*, 178 Mich. 225; *Stewart* v. *Stark*, 181 Mich. 408; *Casterton* v. *Plotkin*, 188 Mich. 333; *Sherrard* v. *Mur-*

*phy,* 193 Mich. 352; *Davison* v. *Taylor,* 196 Mich. 605; *Andre* v. *Donovan,* 198 Mich. 256.

It is our conclusion from this record that the erection of the structure contemplated by the defendant would seriously injure the property of the plaintiffs, and under the existing conditions the result reached by the circuit judge was clearly equitable and right. His decree is therefore affirmed, with costs.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.