## FARLEY *v.* FINN.

1. COVENANTS—BUILDING RESTRICTIONS—WAIVER OF RIGHT TO EN-
FORCE RESTRICTIONS.

> Failure of a property owner in restricted territory to take
> action for prevention of violations in other blocks or
> on other streets in the restricted district does not neces-
> sarily deprive him of the right of enforcing the restric-
> tions when a violation is attempted in proximity to his
> property which would especially and directly be injurious
> to him.

2. SAME—RESTRICTIONS EFFECTIVE EVEN IF NOT IMPOSED ON ALL
LOTS.

> Restrictions may be effective although not imposed in the
> conveyance on every lot in a generally restricted sub-
> division or district.

3. SAME — DEEDS — BUILDING RESTRICTIONS — "RESIDENCE" AND
"DWELLING HOUSE" DISTINGUISHABLE.

> There is a clear distinction between a restriction that
> property shall be used for "residence purposes only" and
> one where it is confined to a "dwelling house;" the former
> having no application to an apartment house.

4. SAME—APARTMENT HOUSE VIOLATES RESTRICTION TO DWELLINGS
ONLY—INJUNCTION—WAIVER.

> The erection of a 57-apartment building would be a
> violation of a restriction in a deed confining its use to
> "dwelling house and appurtenances, including proper out
> buildings," only, and, where there has been no violation
> of restrictions in the block, and no waiver of rights by
> plaintiffs, will be enjoined at the instance of property
> owners injuriously affected thereby.

Appeal from Wayne; Webster (Clyde I.), J. Sub-
mitted January 30, 1924. (Docket No. 44.) Decided
March 5, 1924.

Bill by Robert E. Farley and others against Harold
R. Finn and another to enjoin the violation of build-

On multiple residence structures as violation of restrictive
covenants, see notes in 45 L. R. A. (N. S.) 726; L. R. A. 1918C,
873.

On question of multiple residence as violation of restrictive
covenants, see note in 18 A. L. R. 451.

ing restrictions.    From a decree for plaintiffs, defendants appeal.    Affirmed.

*Leo J. Carrigan* (*Harrison Geer*, of counsel), for plaintiffs.

*Renaud, Hulett & Wing* (*Ralph B. Wilkinson*, of counsel), for defendants.

STEERE, J.    Defendants appeal from a decree of the Wayne county circuit court, in chancery, restraining them from erecting a 57-family apartment building on property located at the northwest corner of Lawton avenue and West Grand boulevard, being in Norton & Beardsley's subdivision of a portion of quarter section 53, 10,000-acre tract, in the city of Detroit. This subdivision consists of two long blocks lying on the north side and facing the Grand boulevard, extending east and west from Wildemere to Linwood avenues, separated from each other by Lawton avenue, which connects with and extends north from Grand boulevard.    Each of these blocks is over 800 feet long.    As originally platted this subdivision consisted of one continuous block but later was divided into two blocks by the opening of Lawton avenue 60 feet in width which took all of lot 15 and a small portion of lots 14 and 16.    The property involved here is in the east end of the first block, on the west side of Lawton avenue.    It comprises lot 14 and easterly half of lot 13 of said block, which contains 14 lots counting the remaining west half of lot 13. Lot A is at the extreme west next to Wildemere avenue.    Most of the lots in this subdivision are 50 feet in width and all of the same depth, extending 204.75 feet north from the boulevard to an alley in the rear.

The original plat of the subdivision showed no restrictions, but restrictions were imposed upon most

of the lots in deeds given as they were sold by the original grantors. The restrictions varied more or less in phraseology, some of the variations being as follows: "For residence purposes only;" "except for single residence purposes only;" "for dwelling houses and their appurtenances;" "for dwelling purposes;" "a dwelling house." The variation most important in this litigation is between "residence purposes" and "dwelling house." The restrictions imposed upon the site of the proposed apartment building relied on by plaintiffs are:

"The premises are to be occupied only for dwelling house and appurtenances including proper out buildings. No dwelling house is to be erected or placed on either lot to cost less than $2,500 and stand not less than 50 feet back from the outer edge of the boulevard."

Of the plaintiffs, Robert E. Farley and wife own the property next west of defendants' upon which they have a single dwelling house, the restrictions on their property being "only for dwelling houses and their appurtenances." Frank C. Carrigan and wife adjoin them on the west and they in turn are joined by plaintiff Hartwig. All live with their families on their respective lots and have strictly complied with the restrictions imposed upon them. All lots in said block are built upon and occupied except defendants'. The first eight buildings west of defendants' property are single dwellings. The next is a four-family residence, beyond which are three single dwellings, west of them are three two-family residences and on lot A, next to Wildemere avenue, is a six-family residence. The testimony, supported by verified photographs and a plat of the property, fully sustains the following findings of the trial judge:

"It will thus be seen that the first eight buildings west of the property of the defendants are all single

residences.    They are all nice residences worth in excess of $20,000 each.    I have personally visited these premises several times.    The entire block has a very fine appearance.    Not only are these single residences fine and expensive buildings, but the four-family and the three two-families are also, and all really have the appearance of single dwellings.    The only building to detract at all from the appearance of the entire block is the six-family at the extreme west end of the block, at the corner of Wildemere. There has been no violation of the restrictions in this block that I can find.    Single residences have been built where flats might have been built, but every lot in this block which is restricted to a single residence, or to a dwelling house, has a single residence upon it. The restriction that the building shall be 50 feet back from the front lot line has also been uniformly observed, and there is practical uniformity, much more than usual, in the distances that the front porches extend into this restricted area."

The substance of the contentions urged for defendants against the decree appealed from is that none of the lots in the subdivision is burdened with restrictions which "will prohibit the erection of the 57-apartment building contemplated;" if they were, "appellees and all other property owners in said subdivision have waived the right to enforce them;" and that the case of *Teagan* v. *Keywell*, 212 Mich. 649, involving the erection of an apartment building on a lot east of Lawton avenue in the other block of this subdivision, is *res adjudicata.*

This court has so recently and often had occasion to discuss the subject of building restrictions involving questions similar to those raised here that it seems unnecessary to discuss at length the subjects reviewed in those decisions.    This court has several times held in the last few years that failure of an owner in restricted territory to take action for prevention of violations in other blocks or on other streets in the restricted district does not necessarily deprive

him of the right of enforcing the restrictions when a violation is attempted in proximity to his property which would especially and directly be injurious to him. *Schadt* v. *Brill,* 173 Mich. 647 (45 L. R. A. [N. S.] 726); *Misch* v. *Lehman,* 178 Mich. 225; *Stewart* v. *Stark,* 181 Mich. 408; *Davison* v. *Taylor,* 196 Mich. 605; *Rosensweig* v. *Rose,* 201 Mich. 681; *Swan* v. *Mitshkun,* 207 Mich. 70; *McNair* v. *Raymond,* 215 Mich. 632; *Harley* v. *Zack,* 217 Mich. 549; *Harvey* v. *Rubin,* 219 Mich. 307; *Bohm* v. *Silberstein,* 220 Mich. 278; *DeGalan* v. *Barak,* 225 Mich. 378; *Nechman* v. *Ross,* 225 Mich. 113.

This court has also held that restrictions may be effective although not imposed in the conveyance on every lot in a generally restricted subdivision or district. *Frink* v. *Hughes,* 133 Mich. 63; *Allen* v. *City of Detroit,* 167 Mich. 464 (36 L. R. A. [N. S.] 890); *Harley* v. *Zack, supra; Harvey* v. *Rubin, supra.*

The *Teagan Case* is not *res adjudicata* of this. In that case plaintiffs lived and the lot involved was located in the block between Linwood and Lawton avenues. The erection sought to be restrained was an apartment house. The restriction at issue was that the lot should be used for "residence purposes only." Citing and commenting on several decisions, including *Casterton* v. *Plotkin,* 188 Mich. 333, and *Rosenzweig* v. *Rose,* 201 Mich. 681, the court determined that "there is a clear distinction between a restriction that property shall be used for 'residence purposes only' and one where the restriction is confined to a 'dwelling house,'" and held the restriction in question did not prohibit the proposed building.

This distinction is again noted in the recent case of *DeGalan* v. *Barak, supra,* where construction of an apartment building was enjoined and the court said:

"Had the restrictive provisions stopped with limiting the erection of buildings to 'such as are to be used

226—Mich.—14.

exclusively for residence purposes' an apartment house would not offend."

.The restriction in the instant case is "only for dwelling house and appurtenances." Under it defendants propose to rear upon their lot a pueblo community house containing 57-family apartments, which would accommodate at least twice as many families as all the other houses in that entire block over 800 feet in length provide for with all lots in the block except defendants' now built upon and occupied.

Defendants' counsel cite, as supporting their contention that the restrictions have become obsolete by reason of changed conditions in that locality, *Windemere, etc., Ass'n* v. *American State Bank*, 205 Mich. 539. There defendant contemplated erection of a bank building on Woodward avenue in a subdivision originally restricted to residential purposes, but the fact of a complete change of conditions along Woodward avenue in that locality from residential to business uses and demands was conceded, and it was shown the association favored the erection of the proposed bank building. The controversy was over how close the building could be built to the side street line. The association had itself on previous occasions helped develop that part of Woodward avenue as a business section by agreeing that for the purpose of erecting business blocks on certain lots in the subdivision facing the avenue the restrictions should be "lifted" or ignored, and permitting by default ratification of their disregard under decree of the chancery court.

In the instant case there is no suggestion of waiver. Plaintiffs testify that they were led to buy lots and establish their homes in this block by reason of its character as an attractive and restricted residential section. They have all complied with the restrictions imposed on the property purchased by them as have

all others so far as shown who purchased and built in that block. We think it clearly appears under the letter and spirit of previous holdings by this court, as applied to the facts in this record, that the proposed structure offends against the restrictions placed upon the defendants' lot, and against the rights of those who have purchased property and established their homes in that block, depending upon and universally complying with the restrictions imposed on their holdings. As was said in *Swan* v. *Mitshkun*, 207 Mich. 70, we conclude:

"The case falls well within that class where it is the policy of the courts of this State to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings, free from inroads by those who attempt to invade restricted residential districts and exploit them under some specious claim that others have violated the restrictions, or business necessities nullified them."

The decree will stand affirmed, with costs to plaintiffs.

CLARK, C. J., and BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred. McDONALD, J., did not sit.