## SWAN *v.* MITSHKUN.

COVENANTS—BUILDING RESTRICTIONS—INJUNCTION.
   In proceedings to restrain the erection of a garage in a residential district in violation of restrictions contained in defendants' deed, evidence *held*, to sustain the findings of the court below that the contemplated building was in violation of said restrictions, entitling plaintiffs to relief.

Appeal from Wayne; Tucker, J., presiding. Submitted June 11, 1919. (Docket No. 5.) Decided July 17, 1919.

Bill by Edward P. Swan and others against Mark Mitshkun and another to enjoin the violation of certain building restrictions. From a decree for plaintiffs, defendants appeal. Affirmed.

*Charles Bowles*, for plaintiffs.

*Berger & Milburn* (*P. J. M. Hally*, of counsel), for defendants.

---

The question as to whether garage or stable is within restrictive covenants in conveyance of real estate is discussed in a note in 34 L. R. A. (N. S.) 730.

STEERE, J.   Plaintiffs' bill of complaint was filed in this case to restrain defendants from building a garage for business purposes fronting on Hamilton boulevard upon lots 814, 815, and 816, located at the northeast corner of Puritan avenue and Hamilton boulevard in the Medbury Park subdivision of a part of fractional sections 13 and 14, town 1 south, of range 11 east, in the village of Highland Park, in violation of the following restrictions contained in their muniments of title to said property:·

"And in further consideration, that there shall not be erected on the front of said premises above described any building other than that for residence purposes only, and any building so erected shall conform to the following restrictions, viz.:

"Single, private residence; to be set back at least thirty (30) feet from the front lines of the lot, at least four (4) feet west of the east lot line, and to cost not less than $3,000. Plans for said building must be submitted to the first party for inspection before construction is begun."

The Medbury Park subdivision, which lies between Woodward avenue and Hamilton boulevard, was placed upon the market by the Hannan Real Estate Exchange and was platted and sold as a desirable, highly restricted residence subdivision, laid out to that end with the lots facing the east and west streets running through it, except the lots adjoining Woodward avenue which faced that thoroughfare on its west side with an alley at their rear and were not offered for residences, but designed for business property should business reach that section of the suburbs of Detroit. The subdivision, which is in the neighborhood of a half mile square, has 5 avenues running through it east and west extending from Woodward avenue to Hamilton boulevard. All lots in the subdivision were sold under building restrictions for residential purposes only, except the lots facing Woodward avenue. The re-

strictions differed somewhat on the various avenues in the different blocks, lots on Eason and Moss being restricted to bungalows. Those in the first block from Woodward were to cost no less than $3,500, in the second block $3,000 and in the third block $2,500. Puritan avenue lying to the south extends east and west about centrally through the subdivision from Woodward to Hamilton and has been built up as a high grade single residence street restricted to 2-story single residences to cost not less than $4,500 in the first block west of Woodward, $4,000 in the second and in the third $3,500. On Puritan avenue the size of building sites for a single residence was increased to a lot and a half and so sold with the restriction quoted.

At the time this litigation arose Eason and Moss avenues lying farthest to the north and away from the city of Detroit were about three-fourths built up and Puritan avenue over half. In the great majority of cases the buildings which had been erected upon this subdivision had cost from two to three times the minimum amount required by their building restrictions. It also appeared that at the time of the trial the greater part of the business property in the subdivision fronting on Woodward avenue was still unsold and unimproved, and there remained plenty of unrestricted vacant property on the west side of Hamilton boulevard in that locality.

When the subdivision was placed upon the market by the Hannan Real Estate Exchange these restrictions were emphasized and extensively advertised, and were included in all contracts and deeds given on lots sold in the subdivision for residential purposes. The property in question passed through several owners with these restrictions until purchased by defendants on March 21, 1918. The restrictions were plainly set out in the deeds, or contracts, received by them and

the testimony shows they were read and understood
by the defendants.

Defendant Frisbie is shown to have been actively
engaged in handling real estate in Highland Park,
familiar with values, deals and developments in that
section. In his real estate operations he had acquired
four corners in the Medbury subdivision on Hamilton
boulevard with the restrictions in his conveyances.
He testified corners would be much more valuable for
business than residence purposes; that he understood
the restrictions "didn't amount to anything" and he
had no intention of building residences on them. Of
the garage which they started to erect, he stated it
was to be 40 feet front on Hamilton and 90 feet deep
with a show window in front, and they figured on
leasing it for a tire salesroom and repair business.

Plaintiffs are property owners in the subdivision
with their homes on Moss and Puritan avenues. Upon
defendants commencing construction of the garage
they filed this bill of complaint and obtained a tem-
porary injunction restraining its erection.

Defendants made answer admitting that they were
proceeding to construct a building as alleged, did not
deny the restrictions contained in their conveyances,
but claimed that owing to changed conditions and the
development of business along Hamilton boulevard it
had become a business street unsuitable for residence
purposes, for which reason, in connection with alleged
violations of the building restrictions in Medbury Park
subdivision, they had become inoperative and it would
be inequitable to enforce them against their property
on Hamilton boulevard. The tenor of their answer is
in many particulars similar to defendant's claims in
*Moore* v. *Curry*, 176 Mich. 464.

The testimony is conclusive that on Eason, Moss,
and Puritan avenues the building restrictions have
been well observed, that they are strictly residential

streets built up with fine and attractive homes of a cost and quality far beyond the restrictive requirements imposed. The evidence fairly shows that not only would the attractive features of a strictly residential district and sentimental attributes of exclusive home environments be disturbed, but that the actual market value of the plaintiffs' property on those streets would be much depreciated by the violation defendants are attempting, and especially residences in the immediate vicinity. Concrete proof to that effect was produced as to different properties. Plaintiff Moore, whose home, worth $8,000, is next to the corner and back of the proposed garage and repair shop testified that he bought the property, built a residence and established his home there because of the restrictions imposed in that locality and would not without them have bought or built there. Experienced real estate men and builders testified that the proposed garage would depreciate the value of the Moore property by one-half. Plaintiff Peck, who bought and built his home costing $12,000 on lot 822, about 150 feet east of Hamilton boulevard, testified that the proposed violation would deteriorate the value of his property at least $3,000. But aside from and beyond that issue, those owning property in a restricted residential district or neighborhood, and especially those who have their homes there, and been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block or subdivision in which they have purchased, are entitled to protection against prohibited invasion regardless of how close business may crowd around them on unrestricted property, provided the original plan for a residential district has not been departed from in the restricted district, street or block, and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers.

Upon hearing in the Wayne county circuit court, in chancery, the relief asked for by plaintiffs was granted and the temporary injunction made permanent. An opinion with findings was filed by the trial court, the material parts of which are as follows:

"The proposed garage complained of, if erected, will be a plain violation of the restrictions contained in the deed to, and was at the time of the purchase of the lot upon which it is to be erected, well known and understood by the owners. The claim is made that there have been other violations of the building restrictions of the subdivision at various points in the subdivision and that the character of Hamilton boulevard has so changed since the platting of the subdivision that the lots along that street are needed by the public for business structures.

"Medbury subdivision consists, as I recall it, of some 15 blocks lying between Woodward avenue and Hamilton boulevard and facing Eason, Moss, Puritan and Pilgrim avenues, in Highland Park, and is one of the fine additions to the city. All of the streets are quite fully built up with bungalows and other styles of family residences costing from $2,500 to $10,000.

"I have viewed the premises more than once, on the ground. Practically all of the buildings erected in the subdivision comply with the building restrictions, the requirements being somewhat different in the different streets. I can see nothing to the claim that there have already been violations of the building restrictions in the subdivision and that, therefore, others should be permitted. There is an abundance of vacant property along Hamilton boulevard in the general vicinity of this property, and therefore there can be no public necessity or demand for the use of this property for business purposes."

It would serve no beneficial purpose to further review at length the voluminous record of testimony introduced by the respective parties upon these issues. We think that the findings of the trial court are sustained by the evidence and the conclusions of law supported by authority. The case falls well within that

class where it is the policy of the courts of this State to protect property owners who have not themselves violated restrictions in the enjoyment of their homes and holdings, free from inroads by those who attempt to invade restricted residential districts and exploit them under some specious claim that others have violated the restrictions, or business necessities nullified them.

This case is controlled by the principles announced in *Schadt* v. *Brill,* 173 Mich. 647 (45 L. R. A. [N. S.] 726) ; *Moore* v. *Curry,* 176 Mich. 456; *Misch* v. *Lehman,* 178 Mich. 225; *Stewart* v. *Stark,* 181 Mich. 408; *Casterton* v. *Plotkin,* 188 Mich. 333; *Sherrard* v. *Murphy,* 193 Mich. 352; *Davison* v. *Taylor,* 196 Mich. 605; *Andre* v. *Donovan,* 198 Mich. 256; *Rosenzweig* v. *Rose,* 201 Mich. 681.

The case of *Windemere-Grand Improvement & Protective Ass'n* v. *American State Bank,* 205 Mich. 539, which defendants urge in defense of their position, does not relax the rule as declared in the above cases, nor is it analogous to the instant case in controlling facts. In that case the objection of the association was not to Woodward avenue lots in the subdivision being devoted to business purposes, which it favored, or to the erection of the proposed building on the lot in question. The building restrictions on that lot, which fronted Woodward avenue with Windemere as a side street, were not the same as those on Windemere. Plaintiff's contention under the restriction relied on was narrowed to a question of defendant's right to cut off 8 feet of the view along Windemere from Woodward by building that much nearer the street line. It was shown that the association had in certain instances sought to apportion the condition resting on that subdivision and assisted in lifting the restrictions from other lots on Woodward avenue in the subdivision so that they might be devoted to busi-

ness and had assumed to decide when the restrictions, or some portion of them, should or should not be enforced.  No such fast and loose manipulation of restrictions is imputable to these plaintiffs, and no question of waiver or estoppel by conduct militates against their appeal for equitable relief.

The decree is affirmed, with costs to plaintiffs.

BIRD, C. J., and OSTRANDER, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.