Arvella COCHRAN et al., Appellants,

v.

Elwood LONG et al., Appellees.

Court of Appeals of Kentucky.

May 18, 1956.

Rehearing Denied Nov. 16, 1956.

Phillips &. Dean, Harrodsburg, for appellants.

Draffen & Wickliffe, Harrodsburg, for appellees.

STEWART, Judge.

This action was instituted below by appellees, Elwood Long and Thurman Long, for a declaration of rights to determine whether a covenant in a deed restricting the lot in controversy to residential use would bar them from converting it to a business purpose.

The lots which are the subject of this litigation are 1, 2, 3, 4, 5 and 28 in Block 2 of the Kentucky Real Estate and Improvement Association Addition to the city of Harrodsburg. This addition, consisting of seven blocks, was laid out in 1887, and lies in the southwest portion of that city. Block 2 is bounded on the east by Chestnut Street. Linden Street borders Block 2 on the west and this street, in turn, merges into Maple Street as it extends eastwardly and curves or loops around to join Chestnut Street to form the southern boundary of the block. Cedar Street runs in an east-west direction to connect Chestnut Street with Linden Street and is the northern boundary of the block. This street has never been opened for vehicular traffic except for some 250 feet west of Chestnut Street and a very short distance east of Linden Street.

There are 28 lots in Block 2. Lots 1 through 13 front on Chestnut Street; lots 14 through 16 front on Linden Street; and lots 27 and 28 front on Cedar Street. There was originally a 16-foot alley running northwardly from the loop of Linden and Maple Streets to Cedar Street. Lot 28, which is particularly in controversy in this action, formerly bordered along this alley, which was never made suitable for traffic, for a considerable distance southwardly on the east side thereof.

In 1946, one Mrs. Mayme Woods owned lots 1 through 5 and lot 28 in Block 2, and in that year she sold all this property to various purchasers with the deeds providing that, if any lot was sold separately, the conveyance should have a covenant restricting the use to residential purposes only. There was also a condition that required buildings to be set back at least 60 feet from Chestnut Street. All mesne conveyances, including appellees', have contained this covenant along with the express statement that it ran with the land. Prior to 1946, the entire portion of Block 2 fronting on Chestnut Street was residential. From 1946 until the present, single residences were built on lots 1, 2, 3 and 4 and three such houses were erected on lot 5. All these structures face Chestnut Street. Lot 28, until 1952 or shortly thereafter, was allowed to remain grown up in bushes and trees and was then adjacent to the portion of Cedar Street and the 16-foot alley that were unimproved for traffic.

In 1952, Kentucky Highway No. 35 was rerouted around the city of Harrodsburg and, in pursuance of this project, the Department of Highways of the Commonwealth obtained by condemnation proceedings enough land to build, and it did build, a 60-foot highway through Block 2 in a north-south direction, taking from 40 to 45 feet off the west end of lots 1 to 5, inclusive, in this block and also embracing in the new thoroughfare all of the 16-foot alley. There is a dispute in the testimony as to whether the highway includes any part of lot 28, but the evidence shows that the owner of lot 28 received $300 in the condemnation proceedings by which the Commonwealth acquired all of this land.

Today this highway is heavily traveled. According to appellees' proof, a survey, recently taken, indicated that from 400 to 500 motor vehicles traverse the roadway

through this block every hour. Since the construction of the new thoroughfare a business house has been erected on lot 6 in Block 2, immediately adjoining lot 5 on its north, this building containing a contractor's office and an electrical appliance store. Lot 6 is almost opposite the city standpipe, a structure that was erected some 50 years ago, which is located on lot 20 in this block a short distance south of lot 28. On the lot next to the standpipe to the south, a residence has been erected, and, farther to the south, separated from the residence only by one lot, a service station has been built. One of the Harrodsburg city commissioners testified an ordinance had been enacted zoning this area for commercial use. The residences on lots 1 through 5, facing Chestnut Street, through changes made on the part of the owners, are now equally accessible from Chestnut Street and from the highway. It would seem, however, the block under discussion has remained predominantly residential in character. At any rate, no portion of the restricted area has been diverted to business. There was testimony that lots 1 through 5 would sustain damages ranging from $50 to $5,000, if lot 28 should be employed as contemplated by appellees.

Appellees purchased lot 28 in Block 2 with the intention of operating on it a used-car lot. They received full knowledge of the covenant, since it was set forth in their deed. This suit was filed for a declaration of rights when a controversy arose between them and some of the owners of lots 1 to 5, inclusive, who are the appellants herein, as to whether the restrictive covenant in question would constitute a bar to their plan. From a judgment in favor of appellees, voiding the prohibition against the use of the property for business purposes, this appeal has been prosecuted.

■ The decisive issue in this case is whether there has been such a radical change in the status of lots 1, 2, 3, 4, 5 and 28 in Block 2, affected by the restrictive covenant, as to relieve them of the burden of this covenant. It has been frequently pointed out by this Court that cases involving the determination of whether there has been such a fundamental change in the area subject to a restrictive covenant as to warrant cancelling the covenant under attack must depend upon the facts presented by each case.

■ We believe the principle of law relating to such covenants that must be considered in disposing of the inquiry raised in the case at bar is expressed in the Restatement of the Law of Property, Vol. 5, Sec. 564, p. 3313, in this language: "A change of conditions which will bring into operation the (annulment of a restrictive covenant) is a change of such a character as to make it impossible longer to secure in a substantial degree the benefits sought to be realized through the performance of a promise respecting the use of the land. If it is still possible, despite a change in conditions, to secure the anticipated benefit in a substantial, though lessened, degree, the change of conditions will not alone be sufficient to warrant the refusal of injunctive relief against breach of the obligation arising from the promise." (Insertion ours.)

■ In Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024, 1025, after declaring that, in general, "negative restraints upon the use of land have never been favorites of the law and they are usually construed strictly against the persons seeking to enforce them", the opinion laid down this rule: "It is quite generally held that restrictive covenants against business enterprises will not be enforced where there has been a fundamental change in the character of the property due to municipal expansion, spread of industry, or other causes. * * *"

■ The strict construction rule, alluded to, was followed in this state until comparatively recently in cases involving building restrictions or restrictions as to use, but in Connor v. Clemons, 308 Ky. 9, 213 S.W.2d 438, it was said the strict construction rule will be applied only in instances where ambiguous language creates a doubt as to the intention of the parties.

See also McFarland v. Hanley, Ky., 258 S. W.2d 3; Ashland-Boyd County City-County Health Dept. v. Riggs, Ky., 252 S.W.2d 922.

The problem before us is simply one of deciding whether the facts in this case disclose there has been such a basic change in the character of the restricted property as to cause the covenant in question to be inapplicable to what appellees claim is a new situation. We should also go one step further and emphasize that the rule we heretofore set forth from the Restatement of the Law of Property requires that where its purpose may yet be accomplished, despite the altered nature of the neighborhood, the courts will nevertheless enforce the covenant.

The chancellor, in finding for appellees, held there had been such a complete change in the territory under scrutiny that the restriction as to residential use applicable to lots 1 through 5 and to lot 28 in Block 2 was no longer of any substantial value to these lots. This conclusion was reached, primarily, because of the location of the new highway through this block, over which much traffic proceeds and from which considerable noise ensues. For this reason, it was believed the trend is toward a business district in this area, although in Block 2 only two commercial establishments have been built since the completion of the highway. It is true there was testimony to the effect that some distance to the north and outside of Block 2, particularly at a street intersection about a block distant, several business places have been located within the last year or so, but we do not believe this changes the basic picture at the present time.

It does not follow that the mere presence of a highway that has become one of the principal arteries of travel through the city of Harrodsburg automatically alters the character of the property involved here to the extent that this property is released from the restrictions that adhere to it. In Bickell v. Moraio, 117 Conn. 176, 167 A. 722, a case strikingly similar to the one at bar, after the creation of a 26-lot subdivision with restrictions prohibiting business use, a post road passing through it was widened and improved, resulting in a great increase in traffic, and this condition, together with the fact that the block had been zoned for business and that there was a trend toward a business use of the properties all around the subdivision and facing the road, were advanced as grounds that the neighborhood had so changed in character that to continue the restrictions for residential use in force would bring about an inequitable and unreasonable result. In striking down each of these contentions and upholding the restrictive covenants, the court there held, in respect to the road, that while the properties abutting the road had become less desirable for residential purposes and more valuable for business uses, the increase in traffic had not effected such a complete change in the character of the area as to defeat the objects and purposes of the restrictive covenants so that they were no longer beneficial.

Nor are we convinced that the evidence in this record shows there has been such a transition over to business in Block 2 and the surrounding area as to interfere in any material respect with the enjoyment by appellant lot owners of the benefit of the neighborhood as a place of residence. This is especially true where, as here, the restricted property, though it be small in extent, has not been invaded. Appellants do not claim that the approach of business on either side of the restricted lots along the highway has affected the restricted area's desirability for residential purposes or materially changed its character as a residential district. In Swan v. Mitshkun, 207 Mich. 70, 173 N.W. 529, 530, this language appears, which is in every sense applicable here:

"Those owning property in a restricted residential district or neighborhood, and especially those who have their homes there and have been led to buy or build in such locality by reason of restrictive covenants running with the land imposed upon the street, block, or subdivision in which they have purchased, are entitled to protection

against prohibited invasion regardless of how close business may crowd around them on unrestricted property, provided the original plan for a residential district has not been departed from in the restricted district, street, or block and the restrictive requirements have been generally enforced, or accepted and complied with by purchasers. * * *"

For the reasons indicated, we conclude the findings of fact of the chancellor were clearly erroneous and the judgment is reversed with directions that it be set aside and a new one entered in conformity with this opinion.

SIMS, Judge (dissenting).

I am unable to agree with the majority opinion, and as the question involved is of such moment, I desire to set out my reasons in this dissent.

The majority opinion correctly states the law applicable but, as I see it, falls into error in the application of the facts to the rule of law. There were some 40 to 50 feet taken off the east ends of lots 1 to 5, inclusive, and a material part taken off lot 28 when the highway was constructed through the restricted area. The record shows from 400 to 500 motor vehicles travel this new highway every hour. The situation is comparable to one where a trunk line railroad had been run through this property restricted for residential purposes. One might as well have a residence abutting a railroad as abutting a highway carrying such a stream of traffic, much of which is large freight trucks.

This case is easily distinguished from Bickell v. Moraio, 117 Conn. 176, 167 A. 722, discussed in Annotations of 4 A.L.R. 2d 1130. There, the restricted property was already located on the Post Road which was merely widened, which resulted in an increase of traffic. While here, the trunk line highway was put through the restricted property which theretofore had not abutted any road and had suffered no annoyance or inconvenience from any traffic.

To my mind putting this highway through the property protected by the restricted covenant makes such a change in conditions of the property as to neutralize the benefits of the restriction and to defeat the purpose of the covenant. Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024. This is what the learned judge held on a question of fact. To me his judgment is correct and is about as far from being clearly erroneous as can be imagined. Hence under CR 52.01, I think the judgment should be affirmed.

For the reasons given I most respectfully dissent. I am authorized to say that Judge CAMMACK joins in this dissent.