**Cooper R. SMITH, Jr., Regent & Trustee of Ogden College, Appellant,**

v.

**C. A. TYGRETT et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 14, 1956.

Rehearing Denied June 21, 1957.

Bell, Orr & Reynolds, Chas. R. Bell, Bowling Green, for appellant.

G. D. Milliken, Jr., Bowling Green, for appellees.

**STANLEY, Commissioner.**

This is an appeal from a judgment canceling and adjudging to be ineffectual restrictions to the exclusive use for residences contained in conveyances of certain lots of a subdivision or addition to Bowling Green.

The judgment declares and rests upon a more extended opinion and finding of the chancellor "that there has been such a fundamental and substantial change in the character of the neighborhood of plaintiffs' property due to the municipal development and expansion of business that whatever mutual benefit may have been realized or intended at the time of the establishment of the residential restrictions has been lost as the result of the substantial change in the character of the neighborhood and the enforcement of the residential restrictive covenants in plaintiffs' deeds would be oppressive and inequitable."

The late R. C. P. Thomas devised a farm near or contiguous to the southern limits of Bowling Green to Ogden College. The regent and trustee of the college subdivided a portion of this property into building lots in 1939 and placed restrictions upon the use of the lots, particularly for exclusive residential purposes. It was covenanted in the conveyances to those lots that similar restrictions would be placed on any future subdivision of the remainder of the land, which contained about 130 acres. At that time the building of a modern by-pass of Bowling Green as a part of U. S. Highway 31W appears not to have been contemplated. That major artery of traffic was

later built through the 130 acre tract. Thereafter when it was subdivided in 1948 or 1949, the lots therein were restricted as had been provided for in the first and original subdivision. The restrictions upon buildings are of "one single family or two-family dwellings" of described minimum sizes and character and cost with designated locations in relation to the street line and adjoining property lines. Paragraph 7 of these restrictions is as follows:

"These protective covenants are to run with the land until 1978 and they may be enforced by any property owner of a lot of the original Thomas tract containing these or similar covenants, or by the grantor's representatives."

The present action is prosecuted by several owners of unimproved lots and one with a dwelling house on it against the Regent and Trustee of Ogden College, seeking to have their lots relieved of the burden of the restrictive residential covenants upon the grounds which the court found to exist as above stated.

The area involved in the case lies along the south end of U. S. Highway 31W by-pass and extends southwardly from the intersecting street called Cabell Drive to the connection with the old or main highway at Chestnut Street. The lots border on both sides of the by-pass for a distance of about 2,500 feet. Northwardly the by-pass extends to the Barren River, a distance of about two miles. Except where the four blocks along an existing street were converted into the thoroughfare, about midway of its length, on which there were dwelling houses, the entire by-pass north of the present area has been built up and is being used for many and various kinds of commercial enterprises, such as motels, gas filling stations, restaurants, stores, a drive-in theatre and two used car lots. But all this is outside of the residential subdivision and the area involved in this case.

The grantors of the plaintiffs' lots continue to own a number of such lots bordering the by-pass, and they have resisted the removal of the restrictions.

Before the second area of the Thomas land was subdivided, the grantor conveyed a lot within the subdivision at the corner of the by-pass and Cabell Drive to the Municipal Electric Plant Board for the erection of an electric transformer station thereon, and such an instrumentality now occupies the lot. After subdividing the land, he conveyed an adjoining lot on Cabell Drive to the city for the erection of a fire station. Concerning these conveyances to the city for municipal purposes, the appellant maintains that this was done in a cooperative spirit and in recognition of the city's power of eminent domain. In later conveyances to at least two of the appellees, it was stipulated that they were purchasing and acquiring their lots notwithstanding the previous sales to the city, and that there had been and was no intention on the part of the grantor or the grantees to change the character of any portion of the subdivision.

■ We do not regard as of controlling significance the conveyance of the lots by the grantor to the city for in doing so the grantor did voluntarily what he might have been compelled to do. The power of eminent domain is not susceptible of abridgement or impairment by contracts of private parties. Ashland-Boyd County City-County Health Dept. v. Riggs, Ky., 252 S.W.2d 922; City of Louisville v. Milton, Ky., 247 S.W.2d 975.

In our several cases involving the cancellation or removal of similar restrictions by a court of equity we have discussed the law of the subject quite extensively. Reiteration, of course, is unnecessary. See Goodwin Brothers v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024; Parrish v. Newberry, Ky., 279 S.W.2d 229; Franklin v. Moats, Ky., 273 S.W.2d 812; Cochran v. Long, Ky., 294 S.W.2d 503; Anness v. Freeman, Ky., 294 S.W.2d 77. These cases set up as justifiable the grounds upon which the court in the case at bar granted the

relief sought by the plaintiffs. It may be observed that the Parrish case was principally decided upon estoppel of the grantor, who had placed the restrictions in all the other deeds, from canceling the restrictions upon a certain lot. The factual conditions in the case, however, are much like those in the present case. So also are the conditions in Cochran v. Long, supra, Ky., 294 S.W.2d 503.

The entire subdivision has been annexed to the City of Bowling Green since it was laid out. Many witnesses expressed the opinion that the encroachment of commercial enterprises along the highway north of this subdivision and the heavy traffic on the thoroughfare through it have greatly diminished or wholly destroyed the value of the lots along the highway for residential purposes. Among the witnesses were members of the City Planning and Zoning Commission who testified that while the area had not been zoned, whenever zoning should be considered they would vote to classify the lots along the by-pass as commercial. Nevertheless, the grantor, who retains ownership of some of the lots along the highway, and other property owners in the subdivision object to the removal of the restrictions. The fact is that the highway was contemplated or had actually been constructed when the particular covenants with all the purchasers of lots in this subdivision were entered into.

Except for the contractual obligation to the grantees who acquired lots in the original subdivision of the Thomas property, the restrictions particularly involved are but eight years old. There has been no change in the character of the neighborhood by reason of the parties having ignored or mutually rescinded the covenants. The changes have occurred entirely outside the restricted area, which is separated from the line of commercial activities by Cabell Drive.

This court has reached a conclusion different from that of the special chancellor who tried the case below. The court is of opinion that the parties have not shown the changes to be such as to warrant a cancellation of the restrictive covenants.

The judgment is reversed for entry of a judgment consistent with this opinion.