**L. L. OSBORNE and His Wife, Anliza Osborne, Appellants,**

v.

**Aubrey HEWITT and His Wife, Jean Hewitt, et al., Appellees.**

Court of Appeals of Kentucky.

May 27, 1960.

Marshall Funk, Bowling Green, for appellants.

No appearance for appellees.

CULLEN, Commissioner.

The question presented is whether there has been such a change in the character of the neighborhood of a particular tract of land platted as a residential subdivision as to warrant nullification of restrictive covenants against commercial use. The lower court answered the question in the negative.

The appellants, L. L. Osborne and wife, own five vacant lots in Block A of the Fairview Heights Subdivision, near the city of Bowling Green. In this block there are two sets of thirteen 50-foot lots, running from north to south, one set facing Grider Street on the west and the other facing Riverwood Drive on the east. At the south end of the block there are four large lots facing Fairview Avenue, which runs east and west. The original owner who laid out the subdivision in 1945 placed restrictions in the deeds to all of the lots, limiting them to residential use. In 1949 the U.S. 31–W By-Pass was constructed around Bowling Green, to divert major traffic around the city. A section of the by-pass crossed through property immediately to the west of Grider Street, leaving

a triangular shaped tract between Grider Sreet and the by-pass. The base of this triangle, facing Fairview Avenue on the south, is some 400 feet wide, and the triangle gradually narrows going northward, coming to its apex at the intersection of Grider Street with the by-pass, immediately above the north line of Block A of the Fairview Heights Subdivision. The triangular tract has come to be occupied exclusively by commercial enterprises, with their main entrances on the by-pass but with back entrances on Grider Street. Also, by reason of the fact that Fairview Avenue extended to the southeast is a county highway, persons living along that highway have made Grider Street a thoroughfare for travel between their homes and the by-pass to Bowling Green.

The vacant lots owned by the appellants are the five southernmost facing on Grider Street. The appellants own also the large lot facing Fairview Avenue at the intersection of that avenue and Grider Street, and on this lot they maintain their residence. With the exception of the appellants' five lots and two other vacant lots facing on Grider Street, all of Block A is occupied by residences.

Before the instant action was brought the appellants succeeded in obtaining a written waiver of the restrictions from most of the owners of lots in Block A. However, a few owners, including Aubrey Hewitt and wife whose home is on the large lot immediately south of the appellants' home, declined to sign a waiver. Thereupon the appellants brought this action seeking a declaratory judgment, against the Hewitts individually and as representatives of other property owners similarly situated.

The Hewitts did not file answer or enter their appearance in the action (although they were present at the taking of the appellants' depositions and asked some questions). The case was submitted on the complaint and appellants' depositions. The trial court concluded that the change in the character of the neighborhood was not such as to authorize a cancellation of the restrictions, and entered judgment dismissing the complaint.

The appellants maintain that under CR 8.04 the averments in their complaint were required to be taken as admitted, because no responsive pleading was filed. However, we think no responsive pleading was required, because in stating the nature of the controversy upon which a declaratory judgment was sought the complaint alleged not only the contentions of the plaintiffs but also those of the defendants.

Upon the merits of the case the appellants point out that the construction of the by-pass was not contemplated when the subdivision was laid out; the triangular tract immediately across Grider Street from the subdivision has acquired a completely commercial character; the traffic on Grider Street has become heavy; there is practically no market as residential property for the vacant lots facing Grider Street; and the area has been rezoned for commercial uses.

These points may be answered as follows: (1) The by-pass does not touch the block in question. (2) There has been no commercial development within the restricted area itself, see Cochran v. Long, Ky., 294 S.W.2d 503, and the mere fact that there has been commercial development across the street from the restricted property is not enough to warrant relief from the restrictions. Hardesty v. Silver, Ky., 302 S.W.2d 578; Franklin v. Moats, Ky., 273 S.W.2d 812. (3) Heavy traffic on the abutting street does not furnish justification for removing the restrictions. Smith v. Tygrett, Ky., 302 S.W.2d 604. (4) There was evidence that although the lots in question would be much more valuable if freed for commercial uses, they still have some value with the restrictions on them, perhaps as much as $500 each. (5) The action of the planning and zoning authorities in rezoning the area could not operate to relieve the land

from the restrictions. Parrish v. Newbury, Ky., 279 S.W.2d 229.

It is our opinion that this case cannot be distinguished from Cochran v. Long, Ky., 294 S.W.2d 503. Applying the test stated in that case, the trial judge was warranted in finding that the change in character of the neighborhood was not such as to make it impossible longer to secure in a substantial degree the benefits sought to be realized through the performance of the restrictive covenants.

The judgment is affirmed.