**152**

Ethel STOWE et al., Appellants,

v.

William H. BRIGGS et al., Appellees.

Court of Appeals of Kentucky.

Feb. 27, 1970.

Robert W. Dickey, Bell, Orr & Reynolds, Bowling Green, for appellants.

G. D. Milliken, Jr., Bowling Green, for appellees.

DAVIS, Commissioner.

The judgment on appeal granted an injunction forbidding construction of a multi-family apartment building as being violative of restrictive covenants applicable to a subdivision in Bowling Green. Prior litigation concerning the restrictions in the same subdivision was dealt with in Smith v. Tygrett, Ky., 302 S.W.2d 604, but the decision there is not dispositive of the present controversy.

The subdivision in question was once the 130-acre farm of the late Judge R. C. P. Thomas. In 1945 Ogden College, devisee of the land, filed a plat reflecting the subdivision of a part of the farm. This plat had no accompanying restrictions and included only the lots in Blocks A through F, all lying north of Logan Avenue.

On September 10, 1949, another plat was recorded reflecting the subdivision of the entire original farm. The latter plat included Blocks G through L, as well as Blocks A through F of the original plat.

The appellees, plaintiffs in the trial court, own Lot No. 11–A in Block F of the original plat, having acquired title to it by deed recorded September 20, 1948, (nearly a year before the second plat was recorded). The deed contains eight restrictions, the pertinent ones of which are:

(1) This lot shall be known and described as a residential lot. No structure shall be erected, altered or permitted to remain on this lot other than one single family or two-family dwelling, not to ex-

ceed two and one-half stories in height and a private garage for not more than three cars.

(2) [Provides set-back line not closer than 50 feet from front lot line, nor closer than 25 feet to any side street line, or side lot line.]

(7) These protective covenants are to run with the land until 1970, and they may be enforced by any property owner of a lot of the original Thomas tract containing these or similar covenants.

(8) As there are adjacent or nearby lots being sold for residential purposes, the plans for the residence to be erected on this lot shall be submitted to the grantor for his approval before the building is commenced so that they will be advised as to whether or not there are any objections to same which would interfere with the plans of the subdivision.

On December 31, 1949, certain restrictions were filed by the Regent and Trustee of Ogden College, purportedly applicable to the entire 130 acres of the Thomas Subdivision. These restrictions were somewhat different from those in appellees' deed just quoted. For example, the first restriction of the "Master Restrictions" filed December 31, 1949, merely recites:

"All lots in this subdivision shall be known and described as residential lots."

Restriction 8 of the "Master Restrictions" provides:

"These protective covenants are to run with the land until December 31, 1970, and they shall be enforcible by injunctive relief or other appropriate remedy by the grantor herein (sic) or any property owner whose property is embraced in this subdivision."

Originally, there were two sets of plaintiffs in the trial court, namely, appellees Briggs and Dr. and Mrs. Frank H. Moore. The trial court dismissed the complaint insofar as Dr. and Mrs. Moore were concerned on the basis that the restrictions appearing in the deed *to* them expired by their own terms in 1965. The Moores have not perfected any appeal from that ruling, so we are not further concerned with that aspect of the case.

The complaint and five amendments to it, considered with admissions in the answers, establish that the effort of the plaintiffs was to enjoin the construction of a 208-unit apartment complex on various parcels of the subdivision, all of which lie south of Logan Avenue (within the area not platted originally). The specific parcels on which the apartment complex is proposed to be built include a tract of 3.91 acres designated as the Sublett Tract, plus Lots ½, 1, 13, 14, 15, and 16 of Block I and Tract X and Lot 9 of Block J. There is controversy as to whether Lot 8, Block J, is part of the proposed building site.

In disposing of the litigation in the circuit court, the trial judge rendered an opinion in which the reasons for his conclusions were expressed, and which we summarize:

Relief was denied to plaintiffs, Dr. and Mrs. Moore, because their lot "was severed from the 130 acre tract before the establishment of the subdivision, and the building restrictions imposed thereon expired in 1965." From this, the trial judge concluded that Dr. and Mrs. Moore had no standing to enforce any building restrictions against any other lots in the subdivision.

As to the 3.91-acre tract of Sublett, the court concluded that no building restriction was applicable, because that tract also was severed from the 130-acre farm before any subdivision, and the restrictions in the off-conveyance deed expired in 1965 by their own terms.

The court determined that "the building restrictions are valid and enforceable as to the remaining lots and portions thereof involved in this litigation," and that plaintiffs, Mr. and Mrs. Briggs, were entitled to enforce the restrictions by reason of the provisions of Restriction No. 7 in their

own deed and Restriction No. 8 in the "Master Restrictions."

■ It is our view that the court was in error in adjudging that the Briggses were entitled to rely on the terminology of the restriction in their own deed. It will be recalled that the Briggses acquired their lot before the subdivision of the southern portion of the tract. Although a "reciprocal negative easement" may have been established by the Briggs deed as between the owners of that lot and the other lots in the originally subdivided tract, no such servitude was thereby created with respect to any of the lots in the portion subdivided later. See McCurdy v. Standard Realty Corporation, 295 Ky. 587, 175 S.W.2d 28, in which it was recognized that the doctrine of reciprocal negative easements is to be applied with extreme caution, since it results in imposition of a servitude on land by implication. In McCurdy, as here, there was a piecemeal subdivision of one tract in two separately platted areas. The court held that a restriction clearly applicable to the first-platted portion was not effective as to the later-platted section. We are not able to find any basis in overall planning, or otherwise, for implying that the more restrictive covenants in the Briggs deed should be enforceable against any of the lots in that portion of the Thomas Farm which was later subdivided. It seems to us that purchasers of lots in Blocks G through L voluntarily became subject to the "Master Restrictions," including the right of lot owners in Blocks A through F to seek enforcement of these restrictions, but no further.

■ The "Master Restrictions," in dealing with permissible use of the lots, merely provide: "All lots in this subdivision shall be known and described as residential." As was recently held in McMahan v. Hunsinger, Ky., 375 S.W.2d 820, a restriction couched in such language is not deemed to prohibit multi-family residences.

■ Although the deed of appellant Stowe may have contained a restriction more limited than the "Master Restrictions," the appellees (Briggses) had no standing to enforce it.

■ Appellees suggest that in any event the construction of the apartment complex would violate the sideline requirements of the "Master Restrictions." It is generally held that an owner of several contiguous lots may utilize all of them for a building (unless other factors preclude it) so long as the sideline restrictions are met with respect to the sidelines of the entire plot. In 20 Am.Jur.2d, Covenants, Conditions, etc., Section 239, page 807, it is written:

"Where an owner has acquired a plot comprising more than one contiguous lot and seeks to build in such a manner as to overlap what would be the side lines if the lots were owned separately, a side-line restriction is applicable only to the outside lines of the plot, regardless of how many lots it includes."

See also 36 A.L.R.2d 871, § 10[a], indicating that the just-quoted concept is generally accepted. It seems to us that the rule is sound. It is applicable here because the appellant, Angel Construction Company, proposes to acquire all of the contiguous lots in question to use as one plot upon which to build the apartment complex.

■ It is appropriate to note that the appellees, as plaintiffs, undertook to challenge certain zoning actions taken by the Bowling Green officials. The trial court expressly declined to rule on that issue, since it was considered unnecessary in light of the court's ruling. Appellants maintain that it was necessary for the trial court to rule on the zoning issue and that the failure of appellees (and the Moores) to appeal had the effect of validating the zoning under principles of *res judicata*. We are not so persuaded. The trial court expressly ruled that the zoning issue was *not* adjudicated. The only *res judicata*

principle we perceive is that the zoning issue remains open and *not* adjudicated.

The judgment is reversed for further proceedings consistent with the opinion.

EDWARD P. HILL, JR., C. J., and MILLIKEN, NEIKIRK, OSBORNE, REED and STEINFELD, JJ., concur.