Earl B. DUERSON, et al., Appellants,

v.

EAST KENTUCKY POWER COOPERATIVE, INC., et al., Appellees (Two Cases).

Nos. 91–CA–1374–MR, 91–CA–1375–MR.

Court of Appeals of Kentucky.

Oct. 16, 1992.

Case Ordered Published by Court of Appeals Dec. 11, 1992.

Kendall L. Duerson, Berea, for appellants.

Sherman Goodpaster III, Winchester, for appellant.

Before HOWERTON, HUDDLESTON and MILLER, JJ.

MILLER, Judge.

Landowners bring these appeals from interlocutory judgments entered pursuant to Kentucky Revised Statute (KRS) 416.610 of

the Eminent Domain Act of Kentucky (KRS 416.540–.670). Appellants challenge the right of appellee, East Kentucky Power Cooperative, Inc., a Kentucky corporation (EKPC), to condemn rights-of-way across their respective farms for the purpose of erecting an electric transmission line. We affirm.

The appellants raise six issues: (1) EKPC cannot condemn unless first obtaining a "Certificate of Public Convenience and Necessity" from the Public Service Commission; (2) EKPC cannot condemn without first obtaining from the Public Service Commission a "Certificate of Environmental Compatibility;" (3) EKPC cannot condemn without first obtaining from the Kentucky Department of Environmental Protection a permit authorizing discharge of an air contaminant; (4) the Kentucky Eminent Domain Act is unconstitutional in that it does not require the condemnor to provide sufficient and adequate information necessary for the commissioners to make an award; (5) the inadequacy of the commissioners' report; and (6) the findings and opinion issued by the trial court are not supported by substantial evidence and are contrary to law.

We discuss the issues raised seriatim. Considering appellants' argument that a certificate of convenience and necessity is required, we think the answer lies within the statute itself. KRS 278.020(1) provides in relevant part:

No person, partnership, public or private corporation, or combination thereof shall begin the construction of any plant, equipment, property or facility for *furnishing to the public any of the services enumerated in KRS 278.010, except retail electric suppliers for service connections to electric-consuming facilities located within its certified territory and ordinary extensions of existing systems in the usual course of business, until such person has obtained from the Public Service Commission a certificate that public convenience and necessity require such construction.* (Emphasis added.)

It is clear that the transmission lines are extensions in the ordinary course of business and, under the statute, do not require a certificate of convenience and necessity. The statute provides for two exceptions: retail service connections and ordinary course of business extensions. It is our view that a correct interpretation of the statute requires that the latter exception applies to all utilities. There is nothing in the wording to dictate otherwise. As such, the power lines under consideration clearly fall within this latter exception.

In an effort to comply with the statute, the commission has adopted a regulation defining extensions in the ordinary course of business. That regulation (807 KAR 5:001, § 9(3)) reads as follows:

(3) Extensions in the ordinary course of business. No certificate of public convenience and necessity will be required for extensions that do not create wasteful duplication of plant, equipment, property or facilities, or conflict with the existing certificates or service of other utilities operating in the same area and under the jurisdiction of the commission that are in the general area in which the utility renders service or contiguous thereto, and that do not involve sufficient capital outlay to materially affect the existing financial condition of the utility involved, or will not result in increased charges to its customers.

We are of the opinion that the foregoing statute and regulation are designed to protect the public against exorbitant utility rates emanating from unnecessary and duplicitous power facilities. We think it unreasonable to conclude that their purpose lies in protecting landowners from eminent domain.

As we examine the record, there is more than ample evidence supporting the fact that the transmission lines in question comport with the regulation and statute. For that reason, we conclude that the defense that appellee has not obtained as a precondition to condemnation a certificate of convenience and necessity has no merit.

We turn to the argument that EKPC cannot condemn without first ob-

taining a "certificate of environmental compatibility" from the Public Service Commission. KRS 278.025(1) provides in pertinent part as follows:

Notwithstanding any other provision of the law to the contrary, no person, partnership, public or private corporation or combination thereof shall begin the construction of *any facility to be used for the generation of electricity* to or for the public for compensation without having first obtained from the public service commission a certificate of environmental compatibility. This requirement shall not apply to such facilities for which an application for a certificate of convenience and necessity has been filed with, or granted by, the public service commission prior to June 21, 1974. (Emphasis added.)

It is our belief that appellants have misinterpreted this statute in a manner not unlike the misinterpretation of KRS 278.020(1). The statute specifically applies to construction of "generating" plants. We do not find a reasonable basis for concluding that the Eminent Domain Act requires a certificate of environmental compatibility for the transmission lines in question.

■ For their third contention, appellants advance the theory that EKPC is unable to condemn their lands because of its failure to obtain a permit from the Environmental Protection Agency. KRS Chapter 224. They contend the electro-magnetic field emitted from the transmission lines constitutes a contaminant within the meaning of KRS 224.01–010, which defines air contaminants as "smoke, dust, soot, grime, carbon, or any other particulate matter, radioactive matter, noxious acids, fumes, gases, odor, vapor, or any combination thereof." We do not perceive the legislature as having included electro-magnetic fields within the purview of the statute. For that reason, we reject this argument. Such emissions may, indeed, be classified as contaminants, but if they are so designated, it remains for the legislature so to do.

■ Having addressed appellants' first three arguments which concern threshold barriers to condemnation action, we are compelled to observe that even had we considered these arguments to be valid impositions upon EKPC, we think they would not be effective defenses to condemnation. The administrative requirements neither lend to nor take from a government's power to condemn. The power of condemnation is inherent in the state alone and is justified on the ground that individual rights must yield to the consideration of the public good and common welfare. *See Cornwell v. Central Kentucky Natural Gas Co.*, Ky., 249 S.W.2d 531 (1952). That power is not subject to abridgment or impairment. *See Smith v. Tygrett*, Ky., 302 S.W.2d 604 (1956). Of course, EKPC holds the right of condemnation by lawful delegation. *See Craddock v. University of Louisville*, Ky., 303 S.W.2d 548 (1957); Ky. Const. §§ 13 and 242; KRS 279.110(4). As to administrative measures, there is ample protection within the statutes authorizing same. Condemnation suits are best left with but two well-understood questions: the authority to condemn, and the public necessity required to initiate that authority.

■ Appellants contend in their fourth argument that a certain provision of our condemnation statute, to wit, KRS 416.570 is unconstitutional. They maintain that the requirements of the condemnation petition are insufficient to permit the commissioners to make a proper award. We interpret this argument to mean that the section of the Act is vague and, therefore, does not pass constitutional muster. Although we need not address this issue for failure to *timely* comply with KRS 418.075 and CR 24.03 (*Maney v. Mary Chiles Hosp.*, Ky., 785 S.W.2d 480 (1990)), we are not inclined to agree with such a contention, as we interpret the statute to place no limitation upon the commissioners in obtaining information to arrive at the proper evaluation of the property under condemnation.

■ In the fifth argument, appellants contend that the commissioners' report, on its face, is improper. They base this on the fact that EKPC's petition for condemnation failed to provide sufficient information re-

lating to the proposed easements. Apparently, the appellants are arguing that the petition should set forth the risk and potential danger to health and safety, such that the commissioners can include these factors as an element of damage for the taking. This is a novel contention for which we find no authority, nor are we furnished any by the appellants. If factors other than those bearing upon the "before and after" value of the property condemned are to be taken into consideration, it seems to us they must be authorized either by the supreme court or the legislature.

■■■ Finally, in their sixth argument, appellants maintain that the findings of the trial court to the effect that EKPC has a right to condemn the property in question are not supported by substantial evidence and are, therefore, insufficient to support the interlocutory judgments. We do not perceive the issues decided by the trial court as resting upon factual findings. As we view the record, the decision that EKPC has the right to condemn the property in question is one of law. We find no abuse.

For the foregoing reasons, the interlocutory judgments of the Madison Circuit Court are affirmed.

All concur.