RENDERED:  MAY 14, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0747-MR

KY MOTEL, INC.                                                   APPELLANT


APPEAL FROM MCCRACKEN CIRCUIT COURT
v.        HONORABLE WILLIAM A. KITCHEN, III, JUDGE
ACTION NO. 19-CI-00398


KENTUCKY OAKS MALL
COMPANY, LTD; BANTERRA
CORP. D/B/A BANTERRA BANK;
CITY OF PADUCAH, KENTUCKY
C/O THE HONORABLE BRANDI
HARLESS, MAYOR; HON. SAM
CLYMER, MCCRACKEN COUNTY
ATTORNEY; AND VIDHI LLC                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND MCNEILL, JUDGES.

COMBS, JUDGE:  This case arose from a lien foreclosure action.  Ky. Motel, Inc.

(KMI), an Illinois Corporation, appeals from the summary judgment and order of

sale of the McCracken Circuit Court entered on January 28, 2020, as amended on

May 5, 2020. The judgment provided that KMI was indebted to Kentucky Oaks Mall Company, LTD. ("Kentucky Oaks"), by virtue of an affirmative covenant included in the deed of conveyance from Kentucky Oaks to KMI's predecessor in title and that Kentucky Oaks was entitled to foreclose its lien. KMI argues that the court erred by failing to conclude: that the covenant should be cancelled due to a change in circumstances; that the covenant could not be enforced because Kentucky Oaks breached its duty to provide maintenance to common areas; and that a previous judgment concerning covenants contained in the deed was not *res judicata*. After our review, we affirm.

KMI acquired approximately 5.4 acres of real property bounded by US 60 and an off-ramp of Interstate 24 in Paducah by a deed of conveyance made on June 1, 2004. The property had been developed as a motel site in 1984, and KMI continued to operate the motel after acquiring the property some twenty years later.

The property was conveyed subject to numerous restrictive covenants, including those: limiting use of the property to a motel; governing the appearance of exterior signage; preventing the construction of fences or other barriers; and dictating the building's overall aesthetics. Curb cuts and drives connecting the motel property to the Kentucky Oaks shopping mall and an adjacent Wal-Mart property were to be constructed by the original purchaser of the motel property.

-2-

They were to be repaired and maintained by its successors in interest (KMI). Kentucky Oaks retained a non-exclusive easement for vehicular and pedestrian traffic over the drive, but the drive could be modified (subject to the approval of Kentucky Oaks) at the successor's expense. The original grantee and successors were to maintain and repair a suitable parking area adjacent to the motel and keep it illuminated.

The property was also subject to a recorded affirmative covenant requiring the grantee and its successors to pay to Kentucky Oaks "an annual fee equal to SIX THOUSAND AND 00/100 DOLLARS ($6,000.00) per year, in equal monthly installments of Five Hundred and 00/100 Dollars ($500.00) each, as adjusted by the Cost of Living set forth in Exhibit D. . . ." Exhibit D provides that "the annual Common Area Maintenance charge payable hereunder" will be adjusted each year to reflect fluctuations in the Consumer Price Index. Exhibit D provides that in no event would the annual Common Area Maintenance charge fall below $6,000.00.

On May 1, 2019, Kentucky Oaks filed an action against KMI based upon its failure "to pay the monthly installments on the common area maintenance assessments" and its failure "to maintain in good condition the roadways and parking lots of the Subject Property." As expressly provided in the deed of conveyance, Kentucky Oaks sought an order requiring the property to be restored

to a state of good repair and an order of sale permitting it to foreclose upon its lien against the property based upon the "unpaid assessments."

KMI answered the complaint and asserted a counterclaim against Kentucky Oaks. In its counterclaim, KMI alleged that the affirmative covenant included in the deed of conveyance should not be enforced because it failed to define the obligations of Kentucky Oaks with respect to "common area maintenance." KMI also alleged that surrounding conditions and the character of the mall area had changed since 1984. Based upon these allegations, KMI sought an order declaring the covenant null and void. In its reply, Kentucky Oaks asserted that the counterclaim was barred by the doctrine of *res judicata.*

In October 2019, Kentucky Oaks filed a motion for summary judgment. In its memorandum in support of the motion, Kentucky Oaks argued that it was entitled to judgment and an order of sale as a matter of law. It contended that the issue of KMI's liability for the payment of the disputed fees had been fully litigated in a previous action and that the judgment of the McCracken Circuit Court entered in January 2012 had resolved every issue as to its right to enforce the covenants. The judgment had upheld the validity of the covenants and awarded Kentucky Oaks "past-due [common area maintenance] assessments against [KMI]" in the amount of $101,197.93, plus interest. Moreover, the parties executed an agreement thereafter reflecting KMI's "continuing obligation to pay

certain common area maintenance fees ('CAM fees'), as provided in a Special Warranty Deed between [Kentucky Oaks] and [KMI's predecessor in interest]."

KMI responded that genuine issues of material fact precluded entry of summary judgment. It argued that the prior judgment and the terms of the parties' written agreement were not dispositive because "circumstances have changed relating to the real property." It reiterated that the character of the area had changed since 2012 and that the "Order does not and could not address facts and circumstances arising after entry of the Order." It also argued that language recognizing KMI's "continuing obligation" to pay common area maintenance fees included in the parties' written agreement did not foreclose KMI's ability to challenge the validity of those fees prospectively. Finally, KMI argued that alterations in traffic patterns, an increase in the number of visitors to the area, and changes to the footprint of nearby commercial entities were all changes impacting "the . . . maintenance need of the 'common area' as described in the 1984 restrictions." KMI sought to conduct discovery with respect to the collection and use by Kentucky Oaks of common area maintenance funds.

Following a hearing, the McCracken Circuit Court concluded that its judgment of January 2012 upheld the validity of the disputed fees. It granted the motion for summary judgment, and an order of sale was entered.

KMI filed a timely motion to alter, amend, or vacate. It argued that the covenant recorded in 1984 "is now void or unenforceable because the area around Kentucky Oaks Mall has undergone substantial change in the past thirty-five years." It also argued that Kentucky Oaks had breached its duty to perform common area maintenance. It requested an opportunity to conduct discovery.

In an order entered May 5, 2020, the McCracken Circuit Court amended its summary judgment. The court concluded that KMI specifically acknowledged its obligation to pay the disputed fees in an agreement that it had executed in late January of 2012, and it rejected KMI's contention that changes in the area had any bearing on the enforceability of the covenant. The court noted that KMI had not identified any instance in which Kentucky Oaks failed to perform common area maintenance. Lastly, it reiterated that its prior judgment had finally decided the parties' dispute concerning the enforceability of the covenant. This appeal followed.

A motion for summary judgment should be granted only where:

> the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR[1] 56.03.  Summary judgment is appropriate where the movant shows that the adverse party could not prevail under any circumstance.  *Pearson ex rel. Trent v. Nat'l Feeding Sys., Inc.*, 90 S.W.3d 46 (Ky. 2002).  We review the trial court's decision to grant summary judgment *de novo.  Caniff v. CSX Transp., Inc.*, 438 S.W.3d 368 (Ky. 2014).  We must consider whether the circuit court erred by concluding that there were no genuine issues as to any material fact and whether Kentucky Oaks was entitled to a judgment as a matter of law.

On appeal, KMI argues first that the court erred by failing to evaluate the changes that have occurred near its motel since 1984.  Citing to the Court's opinion in *Goodwin Brothers v. Combs Lumber Company*, 275 Ky. 114, 120 S.W.2d 1024 (1938), it argues that the change in the character of the neighborhood is sufficient to defeat the purpose of the covenant so as to render it unenforceable.

Next, KMI argues that the court erred by cutting off discovery aimed at investigating whether Kentucky Mall's maintenance of common areas is "over-expansive" or "woefully insufficient."  It contends that the manner in which the disputed fees are collected and utilized is a question of fact precluding summary judgment.

Finally, KMI argues that the court erred by concluding both:  (1) that the doctrine of *res judicata* applies to the controversy and (2) that the parties'

---

[1] Kentucky Rules of Civil Procedure.

written agreement limits its ability to challenge the enforceability of the covenant. While we disagree with each of these contentions, our resolution of the final argument is dispositive.

In *Yeoman v. Commonwealth, Health Policy Board*, 983 S.W.2d 459 (Ky. 1998), the Supreme Court of Kentucky explained that *res judicata* is an affirmative defense that precludes repetitious legal actions. The doctrine encompasses both issue preclusion and claim preclusion. *Id.* Issue preclusion bars the parties from relitigating an issue actually litigated and finally decided in a previous action. *Miller v. Administrative Office of Courts*, 361 S.W.3d 867 (Ky. 2011).

Claim preclusion bars a party from re-litigating a previously adjudicated cause of action. *Id.* The bar includes every matter relating to the subject of the litigation which *could have been* -- as well as those that were -- introduced in support of the contention of the parties in the prior proceeding. *Id.* If two actions concern the same controversy, then the earlier action is deemed to have adjudicated every matter pertaining to the contest. *Id.* Because of its breadth, claim preclusion applies only where there is an identity of parties; an identity of the causes of action; and a resolution of the action upon its merits. *Yeoman*, *supra.*

In evaluating KMI's counterclaim, the court concluded that its prior judgment had decided the parties' dispute concerning the enforceability of the

-8-

covenants affecting the motel property -- the same dispute between them in this proceeding. Because that issue was previously resolved on its merits, the circuit court did not err by concluding that the principle of claim preclusion barred KMI's claim; *i.e.*, that the affirmative covenant requiring the payment of common area maintenance fees to Kentucky Oaks was unenforceable.

In an effort to avoid the effect of claim preclusion, KMI contends that it intends to litigate the enforceability of the covenant **only in light of changes** to the area that have occurred since the judgment was entered in 2012 -- an issue that was not and *could not* have been addressed in the prior proceeding. However, this contention is belied and contradicted by language included both in its pleadings and in its motion to alter, amend, or vacate the summary judgment that posited its claim on changes in the character of the mall area since **1984**.

Furthermore, in arguing that the covenant requiring the payment of common area maintenance fees is no longer enforceable, KMI characterizes the covenant as a restrictive covenant. It relies upon restrictive covenant cases in which the courts recognize changed conditions and, because of the changed conditions, refuse to enforce the covenant or cancel it. *See Godwin*, *supra*; *Cochran v. Long*, 294 S.W.2d 503 (Ky. 1956).

The analysis and holdings of these cases are of no recourse for KMI because they involve an analysis of *restrictive* covenants requiring the covenantor

to refrain from some otherwise lawful use of the property. The matter before the circuit court in this case concerned instead an *affirmative* covenant calling for the payment of money. *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.3 (2000); *Patch v. Springfield School Dist.*, 989 A.2d 500 (Vt. 2009).

Changes in the character of restricted property or the property surrounding it may be so glaring as to cause restrictive covenants to lose their purpose over time. However, that reasoning is not relevant to the enforcement of the common area maintenance fees at issue in this case -- particularly regarding any changes that have occurred in the area since the court's judgment of 2012. *See Lake Wauwanoka, Inc. v. Spain*, 622 S.W.2d 309 (Mo. Ct. App. 1981) (concluding that the analysis of a petition to void an affirmative covenant is fundamentally different from a petition to void a negative covenant involving an alleged change in conditions).

Finally, we are not unsympathetic to KMI's contention that an affirmative covenant should be enforced only where a court identifies a standard by which the covenantee's actions can be evaluated. *See Armstrong v. Ledges Homeowners Ass'n, Inc.*, 633 S.E.2d 78, 81 (N.C. 2006) (concluding that "broad assessments for the general purposes of promoting the safety, welfare, recreation, health, common benefit, and enjoyment of the residents of [a development] as may be more specifically authorized from time to time by the [development's governing

-10-

body]" are unreasonable because they grant "practically unlimited power" to the governing body to assess property owners); *see also Allen v. Sea Gate Ass'n*, 460 S.E.2d 197, 199-200 (N.C. App. 1995) (holding that a covenant requiring an assessment "for the maintenance, upkeep and operations of the various areas and facilities by Sea Gate Association, Inc." was void because there was no standard by which a court could assess how the homeowners' association chose the properties to maintain).

However, this issue was relevant to the subject of the previous litigation.  It could have been introduced in support of KMI's earlier contention that the covenants were unenforceable.  By virtue of claim preclusion, the 2012 litigation must be deemed to have adjudicated every matter actually or potentially pertaining to the cause of action.  Consequently, it is *res judicata.*

We AFFIRM the judgment of the McCracken Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Nicholas M. Holland
Ryan T. Polczynski
Paducah, Kentucky

BRIEF FOR APPELLEE
KENTUCKY OAKS MALL
COMPANY, LTD:

William E. Pinkston
Paducah, Kentucky